# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00729-CV

**The May Department Stores Company, Appellant**

**v.**

**Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas,
and Greg Abbott, Attorney General of the State of Texas, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
NO. GN300583, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

In this case, we must decide whether charges for out-of-state printing of materials advertising a Texas department store, mailed to prospective customers in Texas, are subject to the Texas use tax. Appellant The May Department Stores Company seeks a refund of use taxes paid on charges to print materials advertising its Foley's division. May contends that because it is entitled to a refund, the district court erred in denying its motion for summary judgment and granting summary judgment in favor of appellees, Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas (collectively, "Comptroller").[1]

---

[1] The Comptroller and the Attorney General are statutory defendants in suits for tax refunds. Tex. Tax Code Ann. § 112.151(b) (West 2002). Because their interests do not diverge in this case,

May asserts that the printing is not subject to the use tax because May manufactured the advertising materials from raw materials outside of Texas, and the rule under which the Comptroller imposed the tax conflicts with the plain meaning of the tax code or does not apply. *See* 34 Tex. Admin. Code § 3.346(b)(3)(A) (West 2004) (imposing use tax on "[s]hipments of taxable items from out-of-state suppliers to purchaser's designees"). May further contends that the printing does not satisfy the statutory elements in tax code section 151.101(a), which defines the parameters for imposition of the use tax. *See* Tex. Tax Code Ann. § 151.101(a) (West 2002). Because we find that rule 3.346(b)(3)(A) is valid and applicable and that the out-of-state printing of advertising materials mailed to prospective customers in Texas is subject to the Texas use tax, we affirm the judgment of the district court.

## BACKGROUND

At issue are use taxes in the amount of $595,198.90 paid for the tax audit period of April 1, 1996 through March 31, 1999. The Comptroller imposed the tax on out-of-state printing to produce advertising materials that were mailed to Texas either: directly to prospective customers; to a mailing company that in turn mailed the advertisements to prospective customers; or, for a small percentage of the materials, to Foley's stores and offices. May bought the bulk paper for the advertisements, designed the advertisements, and then paid out-of-state printers to print the advertisements. According to one of May's representatives, an express purpose for the advertising

---

for convenience we will refer to them collectively as "Comptroller."

was to increase sales in the Foley's stores. For example, some of the advertising contained discount coupons that customers could use only for in-store purchases, not for mail or telephone orders.

May paid the tax and then sought a refund of taxes paid on the bulk paper and printing. The Comptroller refunded the tax paid on the bulk paper because the paper is a non-taxable raw material transformed into another item before reaching Texas. *See Sharp v. Morton Bldgs., Inc.*, 953 S.W.2d 300, 303 (Tex. App.—Austin 1997, pet. denied) (holding that when raw materials are transformed into other items out-of-state, those raw materials cannot be put to a taxable use in Texas because they no longer exist). The Comptroller determined, however, that the printing was still subject to the use tax because May used the products of the printing in Texas. May then requested an administrative hearing, in which an administrative law judge (ALJ) recommended upholding the partial denial of the refund request. The Comptroller adopted the ALJ's recommendation.

May next filed suit in a Travis County district court against the Comptroller for a refund of the disputed taxes. *See* Tex. Tax Code Ann. §§ 112.001, .151 (West 2002). Both parties filed cross-motions for summary judgment, May against and the Comptroller in favor of statutory authorization for assessment of the tax. The district court, without stating the grounds for its rulings, granted the Comptroller's motion, denied May's motion, and ordered that the Comptroller retain the funds at issue. We will begin with a discussion of the applicable standards of review on appeal.

## STANDARD OF REVIEW

### *Summary Judgment*

The standards for review of a rule 166a(c) summary judgment are well established: the movant must show there is no genuine issue of material fact and that it is entitled to judgment

3

as a matter of law.  *See* Tex. R. Civ. P. 166a(c); *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). Generally, a party cannot appeal the denial of a motion for summary judgment because it is an interlocutory order and thus not appealable.  *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996).  However, when both parties move for summary judgment and the district court grants one motion and denies the other, the unsuccessful party may appeal both the prevailing party's motion and the denial of its own.  *See Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex. 1996).  We review the summary judgment evidence presented by both sides, determine all questions presented, and render such judgment as the trial court should have rendered.  *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).  When, as here, the trial court does not state the basis for its decision in its order, we review each ground asserted in the motion and affirm the trial court's judgment if any of the grounds are meritorious.  *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

***Statutory Construction***

The parties rely on statutory and administrative provisions to support their entitlement to summary judgment.  We will thus employ well-settled principles of statutory construction.  In general, matters of statutory construction are questions of law rather than issues of fact, *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000), to which we apply a *de novo* standard of review.  *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002).  We must ascertain and give effect to the legislature's intent for the provision we are construing.  Tex. Gov't Code Ann. § 312.005 (West 1998); *State v. Gonzales*, 82 S.W.3d 322, 327 (Tex. 2002); *Fleming*

4

*Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). We construe the text of an administrative rule under the same principles as if it were a statute. *Phillips Petroleum Co. v. Texas Comm'n on Envtl. Quality*, 121 S.W.3d 502, 507 (Tex. App.—Austin 2003, no pet.) (citing *Texas Gen. Indem. Co. v. Texas Workers' Comp. Comm'n*, 36 S.W.3d 635, 641 (Tex. App.—Austin 2000, no pet.)).

We look first to the "plain and common meaning of the statute's words." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999) (quoting *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998)). If the meaning of a statute is unambiguous, we generally interpret the statute according to its plain meaning. *Id.* at 865. We determine legislative intent from the entire act, not simply from isolated portions. *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998) (citing *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990)). We read every word, phrase, and expression in a statute as if it were deliberately chosen, and presume the words excluded from the statute are done so purposefully. *See Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied); *City of Austin v. Quick*, 930 S.W.2d 678, 687 (Tex. App.—Austin 1996) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)), *aff'd*, 7 S.W.3d 109 (Tex. 1999).

In construing a statute, we give serious consideration to an agency's construction of a statute, as long as the construction is reasonable and does not contradict the plain language of the statute. *Continental Cas. Co. v. Downs*, 81 S.W.3d 803, 807 (Tex. 2002) (citing *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993)). We recognize that the legislature intends an agency created to centralize expertise in a certain regulatory area "be given a large degree of latitude

in the methods it uses to accomplish its regulatory function." *Reliant Energy, Inc. v. Public Util. Comm'n*, 62 S.W.3d 833, 838 (Tex. App.—Austin 2001, no pet.) (citing *State v. Public Util. Comm'n*, 883 S.W.2d 190, 197 (Tex. 1994)). Courts, however, "do not defer to administrative interpretation in regard to questions which do not lie within administrative expertise, or deal with a nontechnical question of law." *Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 302 (Tex. App.—Austin 2001, no pet.) (quoting 2B Norman J. Singer, *Sutherland Statutory Construction* § 49:04, at 23-24 (6th ed. 2000)).

The parties disagree about how we are to construe the taxation statutes at issue. May urges that statutes imposing a tax must be strictly construed against the taxing authority and liberally construed in favor of the taxpayer. *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 606 (Tex. App.—Austin 2000, pet. denied). The Comptroller counters that May seeks an exemption, which is strictly construed against the taxpayer. *See North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991); *accord Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 271-72 (Tex. 1979). We agree with May. May invokes neither a statutory exemption nor an implied exemption, but instead argues, based on its interpretation of the tax code, against an imposition of the Texas use tax. In *Morton Buildings*, which also concerned the question of whether to impose the Texas use tax, our Court strictly construed the tax statutes against the State. 953 S.W.2d at 302 ("Any ambiguity in tax statutes must be construed against the State and for the taxpayer.") (citing *Geomap Co. v. Bullock*, 691 S.W.2d 98, 100 (Tex. App.—Austin 1985, writ ref'd n.r.e.)). Accordingly, we will also apply this standard of review. We now turn to our analysis of the applicability of the use tax in this instance.

6

**ANALYSIS**

Section 151.101(a) of the tax code imposes a use tax "on the storage, use, or other consumption in this state of a taxable item purchased from a retailer for storage, use, or other consumption in this state." Tex. Tax Code Ann. § 151.101(a). In urging us to reverse the judgment of the district court, May asserts that the statutory scheme does not allow for the imposition of use tax on out-of-state printing. May contends that rule 3.346(b)(3)(A) is invalid because it conflicts with the plain meaning of the tax code, which May asserts does not encompass distribution. May argues in the alternative that rule 3.346(b)(3)(A) does not apply because the printing was not distributed to Texas. May further asserts that the printing is not subject to the Texas use tax because May's purchase of the printing does not satisfy any of the statutory criteria for imposition of use tax as stated in section 151.101(a). Regarding this section, May contends that no use tax is due because it manufactured the advertising materials from raw materials outside of Texas.

But we do not view these provisions in isolation. Instead, we must examine the purpose and application of the Texas use tax and the relevant statutory scheme as a whole to determine whether the printing is subject to the tax. Upon an examination of the statutory scheme under which the use tax is imposed, beginning with a discussion of the purpose of the use tax, we conclude that the out-of-state printing of advertising materials mailed to prospective customers in Texas is subject to the Texas use tax.

*Purpose of the Use Tax*

"A use tax is a tax on the enjoyment of that which was purchased," *McLeod v. J.E. Dilworth Co.*, 322 U.S. 327, 330 (1944), and complements the sales tax. *Bullock v. Lone Star Gas*

7

*Co.*, 567 S.W.2d 493, 497 (Tex. 1978).  The use tax is designed to tax sales not reached by sales tax and thus reaches use or consumption in the state of property purchased outside of it.  *Bullock v. Foley Bros. Dry Goods Corp.*, 802 S.W.2d 835, 838 (Tex. App.—Austin 1990, writ denied).  The purpose of the use tax is "to more evenly distribute the tax burden among all consumers by imposing a tax on the fruits of an interstate purchase as well as on the sale of property in the State."  *Lone Star Gas Co.*, 567 S.W.2d at 497.  A use tax serves to prevent "avoidance of a state's sales tax by the purchase of goods in another state, and to place retailers in the state upon equal footing with out-of-state competitors, who are not obligated to collect and remit sales tax."  *Foley Bros.*, 802 S.W.2d at 838. Having discussed the purpose of the use tax, we turn to the statutory scheme under which the Comptroller imposed a use tax on May's purchase of printing.

### *Validity and Applicability of Rule 3.346(b)(3)(A)*

We first examine rule 3.346(b)(3)(A), under which the Comptroller imposed the use tax.  May contends that this rule is invalid because it conflicts with the plain meaning of the tax code. "[A]n agency's construction of a statute may be considered only if it is reasonable and not inconsistent with the statute."  *Fleming Foods*, 6 S.W.3d at 282 (citing *Moore*, 845 S.W.2d at 823). The legislature has granted the Comptroller the authority to adopt rules "that do not conflict with the laws of this state or the constitution of this state or the United States for the enforcement of the provisions of this title and the collection of taxes and other revenues under this title."  Tex. Tax Code Ann. § 111.002(a) (West 2002).

May specifically argues that rule 3.346(b)(3)(A) is invalid because it imposes use tax on "taxable items delivered" to Texas recipients:  "[u]se tax is due on taxable items purchased

8

outside this state by a person engaged in business in this state if the taxable items are delivered at the direction of the purchaser to recipients in Texas designated by the purchaser." 34 Tex. Admin. Code § 3.346(b)(3)(A). The Comptroller's authority for amending this rule in 1990 to encompass taxable items delivered to Texas residents was *D.H. Holmes Co. v. McNamara*, in which the United States Supreme Court held that the State of Louisiana could impose use tax on the delivery of catalogs printed out of state and then mailed to Louisiana residents. 486 U.S. 24, 31-32 (1988).[2]

May argues that the Comptroller cannot rely on *D.H. Holmes* because the Louisiana use tax statute specifically included "distribution." *Id.* at 27. But the court's analysis did not turn on the question of distribution. The court accepted the lower court's construction that the use tax statute encompassed distribution. *Id.* at 31. Then, the court applied the four-part test articulated in *Complete Auto Transit v. Brady* to sustain a tax against a Commerce Clause challenge. 430 U.S. 274, 279 (1977). Applying this test, the *D.H. Holmes* court determined that the tax fairly related to the services provided by the state, did not discriminate against interstate commerce, and was fairly

---

[2] In the preamble to rule 3.346, the Comptroller stated that a basis for adopting the rule was the *D.H. Holmes* decision:

> The amendment implements recent legislation and follows a decision in which the United States Supreme Court upheld use tax assessed by the State of Louisiana against a purchaser doing business in Louisiana on purchases of catalogs that were shipped from outside Louisiana to Louisiana residents. The court held that the purchaser had sufficient business presence in Louisiana to warrant the tax assessment and the assessment did not violate the commerce clause of the federal constitution.

15 Tex. Reg. 7029 (1990) (codified at 34 Tex. Admin. Code § 3.346) (adopted Dec. 21, 1990).

apportioned to the local activities of the taxpayer. 486 U.S. at 31-32. The court further found that the taxpayer's activities had a substantial nexus with the state. *Id.* at 32.

May next contends that rule 3.346(b)(3)(A) conflicts with section 151.011(a) of the tax code, which does not include "distribution" in the definition of "use." Act of May 31, 1981, 67th Leg., R.S., ch. 389, § 151.011, 1981 Tex. Gen. Laws 1490, 1547 (amended 1987, 1989, and 2003) (current version at Tex. Tax Code Ann. § 151.011(a) (West Supp. 2004)) [hereinafter "Former Tex. Tax Code § 151.011(a)"]. We disagree. Rule 3.346(b)(3)(A) comports with the plain meaning of the tax code, which is broad enough to encompass the mailing of items to Texas.

Under section 151.011(a), "use" of tangible personal property "means the exercise of a right or power incidental to the ownership of tangible personal property over tangible personal property." Former Tex. Tax Code § 151.011(a). The statutory presumption is that "sale of a taxable item . . . for delivery in this state" and "[t]angible personal property that is shipped or brought into this state by a purchaser" is for storage, use, or consumption in this state. Tex. Tax Code Ann. §§ 151.104(a), .105(a) (West 2002). Rule 3.346(b)(3)(A), which imposes use tax on "taxable items purchased outside of this state . . . delivered at the direction of the purchaser," comes within the ambit of sections 151.104(a) and 151.105(a). Delivery at the direction of the purchaser also falls within the definition of use: "exercise of a right or power incidental to the ownership of tangible personal property over tangible personal property." Former Tex. Tax Code § 151.011(a). Accordingly, we hold that rule 3.346(b)(3)(A) does not conflict with the plain meaning of the tax code.

May asserts in the alternative that because advertising materials, not the printing, were delivered to Texas recipients, rule 3.346(b)(3)(A) does not apply. This rule imposes use tax "on taxable items purchased outside this state by a person engaged in business in this state if the taxable items are delivered at the direction of the purchaser to recipients in Texas designated by the purchaser." 34 Tex. Admin. Code § 3.346(b)(3)(A). The term "taxable item" means "tangible personal property and taxable services." Tex. Tax Code Ann. § 151.010 (West 2002). A purchase includes "printing, or imprinting of tangible personal property." *Id.* § 151.005(4) (West Supp. 2004). Use tax is calculated based on the sales price of the taxable item. *Id.* § 151.101(b); *see* 34 Tex. Admin. Code § 3.346(b)(3)(A) ("purchaser owes use tax based on the purchase price of the items delivered to Texas"). Because the advertising materials are inextricably intertwined with the printing, without which the advertising materials would not exist, the purchase price thus becomes the cost of the printing. Accordingly, rule 3.346(b)(3)(A) applies to the printing at issue. Having determined that this rule applies, we next address whether the charges for the printing are subject to the Texas use tax.

### *Applicability of the Texas Use Tax to the Printing*

May contends that the printing is not subject to the use tax because it does not meet the requirements of section 151.101(a) of the tax code. Included in this argument, in reliance on our holding in *Morton Buildings*, is May's assertion that the printing is not subject to the use tax because May manufactured the advertising materials from raw materials out-of-state, and then shipped the advertising into Texas. *See* 953 S.W.2d at 303. We will first address whether the taxation of the printing meets the requirements of section 151.101(a) and the overall scheme of the tax code.

11

Chapter 151 of the tax code is the Limited Sales, Excise, and Use Tax Act. Tex. Tax Code Ann. § 151.001 (West 2002). Under chapter 151, a sale or purchase includes "the production, fabrication, processing, printing, or imprinting of tangible personal property for consumers who directly or indirectly furnish the materials used in the production, fabrication, processing, printing, or imprinting" when done or performed for consideration. *Id.* § 151.005(4). May asserts that this provision only pertains to sales tax, not use tax. We disagree. Section 151.005 is contained within subchapter A of chapter 151, entitled "General Provisions." These provisions apply to the provisions that follow throughout the chapter unless otherwise stated. *See Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 401 (Tex. 2000) (stating that general provisions of Workers' Compensation Act apply as a default to all other provisions of Act unless Act provides otherwise). Additionally, section 151.005 pertains to a sale *or* purchase. A use tax is imposed on "the storage, use, or other consumption in this state of a taxable item *purchased* from a retailer for storage, use, or other consumption in this state." Tex. Tax Code Ann. § 151.101(a) (emphasis added).

The term "taxable item," as used in section 151.101, means "tangible personal property and taxable services." *Id.* § 151.010. "Tangible personal property" means "personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner." *Id.* § 151.009 (West 2002). The Comptroller considers printing to be the sale or purchase of tangible personal property, *see* Tex. Tax Code Ann. § 151.005(4), because the "essence" of the transaction is the printed material:

12

> When one buys printing services or binding services, or copy services, tax is owed—not because any of these are "taxable services," but because the statute and a long line of cases have made it clear that the essence of these transactions (what the purchaser really wants, and receives) is tangible personal property. It is the business cards, the letterheads, the annual reports, the vitae or resumes, etc . . . .[3]

We give serious consideration to an agency's construction of a statute, as long as the construction is reasonable and does not contradict the plain language of the statute. *Continental Cas. Co.*, 81 S.W.3d at 807 (citing *Moore*, 845 S.W.2d at 823). Because the tax code specifically includes "the production, fabrication, processing, printing, or imprinting of tangible personal property" in the definition of a sale or purchase, Tex. Tax Code Ann. § 151.005(4), we find that the construction is reasonable and does not contract the plain language of the statute. Section 151.005 includes printing of tangible personal property, which would necessarily include printing of the advertising materials. Because section 151.005, which addresses both sales and purchases, applies to the use tax scheme, May's purchase of printing constitutes the purchase of a taxable item.

May next contends that it did not use the printing in Texas or purchase the printing for use in Texas. "Use" of tangible personal property means "the exercise of a right or power incidental to the ownership of tangible personal property over tangible personal property." Former Tex. Tax Code § 151.011(a). "A sale of a taxable item by a person for delivery in this state is presumed to be a sale for storage, use, or consumption in this state unless a resale or exemption certificate is accepted by the seller." Tex. Tax Code Ann. § 151.104(a). May does not contend that it is entitled to any exemption under this statute.

---

[3] Tex. Comptroller of Pub. Accounts, Hearing No. 27,942, STAR System No. 9302083H (Feb. 18, 1993), *available at* http://aixtcp.cpa.state.tx.us/star/openrec2.html.

13

In reliance on *Morton Buildings*, May asserts that because the transformation of rolls of paper into advertising materials occurred out of state, "as a matter of law [May] did not use the printing operations in Texas." In *Morton Buildings*, the taxpayer manufactured building components from raw materials outside of Texas, then shipped the components to Texas and assembled them into buildings for customers. 953 S.W.2d at 301-02. The Comptroller contended that the raw materials were purchased for use in Texas. *Id.* at 302. This Court held that "[b]ecause the lumber and steel are not used in their raw form in Texas but instead are used after their transformation into building components, they are not taxable." *Id.* at 303. Following the holding in *Morton Buildings*, the Comptroller in this case refunded use tax that May had paid on the bulk paper because it was a raw material transformed into something else outside of Texas.

Unlike in *Morton Buildings*, the Comptroller here is taxing the transformation—*i.e.*, the printing—not the raw materials. May's argument attempts to separate the printing from the advertising materials. But without the printing, the advertising materials would not exist. Although May purchased the paper and provided the printers with proofs and printing instructions, it was the printers, not May, who transformed the paper, ink, and other items into the advertising materials. Thus, May's involvement in the production of the materials is not analogous to Morton Buildings's manufacture of the building components.

May's use of the printing, which produced the advertising materials, constituted "the exercise of a right or power incidental to the ownership of tangible personal property over tangible personal property." Former Tex. Tax Code § 151.011(a). First, May directed either the printer or a mailing company in Texas to mail the materials to prospective customers in Texas. Second, an

14

express purpose for the advertising was to increase sales in the Foley's stores. For example, included in some of the advertisements were coupons that customers could use only in the stores. According to May's direct mail business manager, the purpose of the coupons was to generate sales. When using a coupon, a customer returned the coupon to a May employee, thus giving May physical control over the advertising material. In directing the mailings to Texas, using the advertising to encourage purchases in Texas, and taking possession of some of the coupons in Texas, May exercised use of the printing in Texas and purchased the printing for use in Texas. *See* Former Tex. Tax Code § 151.011(a); Tex. Tax Code Ann. § 151.101(a).

In reaching the conclusion that May used the printing, we are informed by the legislature's amendment in 2003 of section 151.011 of the tax code. As amended, "use" means "the exercise of a right or power incidental to the ownership of tangible personal property over tangible personal property, including tangible personal property *other than printed material that has been processed, fabricated, or manufactured into other property or attached to or incorporated into other property transported into this state*." Tex. Tax Code Ann. § 151.011(a) (West Supp. 2004) (emphasis added). That section 151.011(a) was amended in 2003 to exclude "printed material that has been processed, fabricated, or manufactured into other property" from the definition of "tangible personal property" carries a presumption that the legislature intended to change the previous enactment by withdrawing a right that existed before or creating a new right. *Ford Motor Co. v. Motor Vehicle Bd.*, 21 S.W.3d 744, 763 (Tex. App.—2000, pet. denied) (citing *Durish v. Channelview Bank*, 809 S.W.2d 273, 277 (Tex. App.—Austin 1991, writ denied); 1A Norman J. Singer, *Sutherland Statutory Construction*, § 22:30, at 357-58 (6th rev. ed. 2002). With the express

15

exclusion of "printed material" from the definition of "tangible personal property" as it pertains to use, we may presume then that the legislature was aware of a prior construction that included printed material and deliberately limited the scope of the new act. 1A Singer, *supra*, § 22:30, at 361-65.

May last contends, in reference to tax code section 151.101(a), that it did not purchase the printing from a retailer. It asserts, instead, that it manufactured the advertising materials outside of Texas, subcontracting the printing to a printer. Under the use tax scheme, "[t]angible personal property that is shipped or brought into this state by a purchaser is presumed, in the absence of evidence to the contrary, to have been purchased from a retailer for storage, use, or consumption in this state." Tex. Tax Code Ann. § 151.105(a). May does not dispute that it purchased the printing from a printer, nor has it presented any evidence to the contrary. With the presumption of purchase from a retailer, and no evidence to the contrary, we conclude that May purchased the printing from a retail printer. Having addressed all of the elements of section 151.011(a), we further conclude that May's purchase of the printing falls within the definition of "use" under this section.

The purpose of the use tax is "to more evenly distribute the tax burden among all consumers by imposing a tax on the fruits of an interstate purchase as well as on the sale of property in the State," *Lone Star Gas Co.*, 567 S.W.2d at 497, serving to prevent "avoidance of a state's sales tax by the purchase of goods in another state, and to place retailers in the state upon equal footing with out-of-state competitors, who are not obligated to collect and remit sales tax." *Foley Bros.*, 802 S.W.2d at 838. May agrees that printing purchased in Texas would be subject to the Texas sales tax. *See* Tex. Tax Code Ann. § 151.005(4). To hold that the Comptroller could not impose a use tax on May's transaction would encourage people to seek out-of-state services, which would put Texas

16

retailers at a competitive disadvantage. That is precisely what the use tax scheme seeks to avoid. *See Foley Bros.*, 802 S.W.2d at 838.

Strictly construing the imposition of tax against the Comptroller and liberally in favor of May, *Upjohn Co.*, 38 S.W.3d at 606, we hold that the Comptroller's imposition of use tax on May's purchase of out-of-state printing of advertising materials mailed to prospective customers in Texas comports with the statutory scheme for imposition of the use tax. Accordingly, we overrule May's issue and affirm the judgment of the district court granting summary judgment in favor of the Comptroller and denying May's motion for summary judgment.

**CONCLUSION**

Concerning May's contention that rule 3.346(b)(3)(A) conflicts with the plain meaning of the tax code, we hold that this rule, imposing a use tax on "taxable items purchased outside of this state . . . delivered at the direction of the purchaser," follows sections 151.104(a) and 151.105(a) of the tax code. We further hold that the rule applies to the printing at issue, which is a taxable item under section 151.005(4) of the tax code. Informing our conclusion is the legislature's 2003 exclusion of "printed material that has been processed, fabricated, or manufactured into other property or attached to or incorporated into other property transported into this state" from the definition of "tangible personal property" as it pertains to use. *See* Tex. Tax Code Ann. § 151.011(a). With the express exclusion of "printed material" from the definition of "use," we may presume that the legislature was aware of a prior construction including printing within the ambit of the use tax.

17

May's use of the printing, which produced the advertising materials, constituted "the exercise of a right or power incidental to the ownership of tangible personal property over tangible personal property." Former Tex. Tax Code § 151.011(a). After purchasing the printing from a retailer, May directed the advertising materials to prospective customers in Texas, used the advertising to encourage purchases in Texas, and took physical possession of some of the advertising materials in the form of coupons that customers returned to its stores in Texas. Having found that May's purchase of out-of-state printing of advertising materials mailed to prospective customers in Texas is subject to the use tax, we affirm the judgment of the district court.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   July 15, 2004

18