Bob **BULLOCK**, **Comptroller of Public Accounts of the State of Texas, et al., Appellants,**

v.

**FOLEY BROTHERS DRY GOODS CORPORATION, Appellee.**

No. 3–89–124–CV.

Court of Appeals of Texas, Austin.

Dec. 19, 1990.

Rehearing Overruled Feb. 6, 1991.

**836**

Jim Mattox, Atty. Gen., Christine Monzingo, Asst. Atty. Gen., Austin, for appellants.

Mary E. Slay, Charles J. Sullivan, Sullivan, King & Sabom, P.C., Houston, for appellee.

Before SHANNON, C.J., and CARROLL and ABOUSSIE, JJ.

PER CURIAM.

The Comptroller of Public Accounts (Comptroller) appeals the judgment of the district court that granted to appellee (Foley) a refund of state and local sales and use taxes for the period July 1, 1978, to June 30, 1983. We will reverse the judgment of the trial court.

Appellants [1] bring fourteen points of error: (1) the trial court erred as a matter of law in concluding that the Comptroller could not proceed against Foley as a consumer pursuant to Texas Tax Code § 151.515 [2] on the basis that there was no sales tax that Foley should have paid but failed to pay; (2) the trial court's conclusion that there existed no sales tax that Foley should have paid but failed to pay is contrary to the great weight and preponderance of the evidence; (3) the trial court erred as a matter of law in concluding that § 151.515 confers no independent cause of action by the Comptroller against consumers, because whether the action is independent is irrelevant to whether the Comptroller possesses legal authority to audit and assess sales taxes against Foley as a consumer of taxable items; (4) the trial court erred as a matter of law in finding and concluding that the Comptroller may not assess sales taxes against consumers without first proving that their Texas vendors have not paid the tax; (5) the trial court erred as a matter of law in finding and concluding that the audit method used to sample Foley's purchases from its Texas vendors was unauthorized, unreasonable, and produced an invalid result; (6) the trial court's findings and conclusions that the audit method used to sample Foley's purchases from its Texas vendors was unauthorized, unreasonable, and produced an invalid result are contrary to the great weight and overwhelming preponderance of the evidence; (7) the trial court erred as a matter of law in finding and concluding that Foley detrimentally relied upon the Texas vendor policy and consequently was not required to pay sales taxes on its taxable purchases; (8) the trial court's findings and conclusions that Foley detrimentally relied upon the Texas vendor policy and consequently was not required to pay sales taxes on its taxable purchases are contrary to the great weight and overwhelming preponderance of the evidence;

---

1. Appellants are Bob Bullock, Comptroller of Public Accounts of the State of Texas; Jim Mattox, Attorney General of the State of Texas; and Ann W. Richards, Treasurer of the State of Texas.

2. Hereafter, citations to the Tax Code will be by section number only.

(9) the trial court erred as matter of law in finding that the Comptroller used a sampling method to determine Foley's liability for purchases from Texas vendors because the Comptroller made a detailed examination of Foley's capital asset purchases and used a sampling method only upon Foley's expense purchases; (10) the trial court's finding that the Comptroller used a sampling method to determine Foley's liability for purchases from Texas vendors is contrary to the great weight and overwhelming preponderance of the evidence, because the Comptroller made a detailed examination of Foley's capital asset purchases and used a sampling method only upon Foley's expense purchases; (11) the trial court erred as a matter of law in finding and concluding that Foley was entitled to a refund in the amounts stated and to the judgment interest stated; (12) the trial court's finding and conclusions that Foley was entitled to a refund in the amounts stated and to the judgment interest stated are contrary to the great weight and overwhelming preponderance of the evidence; (13) the trial court erred as a matter of law in denying the Comptroller's special exception and jurisdictional plea on Foley's claims for declaratory judgment pursuant to the Administrative Procedure and Texas Register Act and the Uniform Declaratory Judgments Act; (14) the trial court committed harmful error in excluding relevant, admissible evidence.

## THE CONTROVERSY

Foley operates department stores in Texas. Foley purchases: (1) tangible personal property ultimately resold to consumers; and (2) property used to conduct its business. In general, Foley purchases resale items tax free and owes tax on items purchased for use. The items that Foley's purchases for its own use fall into two categories: (1) expense items, such as office supplies, electricity, and display materials and (2) capital assets, such as mannequins, carpet and furniture.

The audit covered the period July 1, 1979 through June 30, 1983, and was completed in July 1984. The audit resulted in an initial deficiency of $210,723.69 for state, city, and metropolitan transit authority taxes, penalty, and interest. The amount owed was reduced in an administrative hearing, and penalty and interest were waived. The amount of penalty and interest is to be refunded under a trial stipulation and is not at issue here.

The invoices at issue did not separately itemize any sales or use taxes due on the sale, or indicate that sales or use taxes were included in the sales price. Foley would either: (1) code the invoice so that its bookkeeping staff would accrue the tax and remit it directly to the Comptroller; or (2) pay the face amount of the invoice without coding it for tax payment. If the invoice was from a Texas vendor, Foley would not accrue and remit tax on the Texas vendor invoices when the vendor did not bill tax on the invoice.

From 1978 to 1982, the Comptroller followed an audit procedure known as the "Texas Vendor Policy." This policy provided that, in an audit, tax would not be assessed against purchasers from Texas vendors unless: (1) a vendor was out of business or in bankruptcy and the tax was uncollectible as a result, or (2) a purchaser gave the vendor a resale or exemption certificate and subsequently used the purchases in a taxable way. This audit procedure was not followed after ten months before Foley's audit. Even after this policy was no longer in effect, the Comptroller did have auditors continue to research previously audited Texas vendors when purchasers were audited. This research and the Texas vendor policy were attempts to avoid taxing the same transaction twice. Assume that the purchaser did not pay tax at the time of purchase, but should have. The seller did not collect tax, but should have. The seller is audited on taxable sales, and the transaction is then taxed. The purchaser is audited. The same transaction is picked up by the auditor as a taxable purchase, and tax assessed. The above policies were intended to avoid taxing the same transaction twice through the audit process, while at the same time insuring that tax was collected on all taxable transactions.

## THE NATURE OF THE TAX

■ Foley contends that the sales tax is not a transaction tax but is a tax upon the vendor. When its Texas vendors failed to bill Foley for sales tax, it was relieved of any obligation to pay tax to the state or to the vendor, unless the vendor sued Foley for the tax in an action authorized by § 151.052.

The sales and use taxes are complementary: "The sales-use tax scheme is designed to make all tangible personal property, whether acquired in, or out of, the state, subject to a uniform tax burden." *Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 83 S.Ct. 1201, 10 L.Ed.2d 202 (1963). That is, the use tax is designed to tax sales which are not reached by sales tax, and, thus, reaches use or consumption in the state of property purchased outside it. Its purpose is to prevent avoidance of a state's sales tax by the purchase of goods in another state, and to place retailers in the state upon equal footing with out-of-state competitors, who are not obligated to collect and remit sales tax. *National Bellas Hess v. Illinois Department of Revenue,* 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967) (states cannot require out-of-state mail order firms to collect state sales/use taxes if their business presence in the state was limited to the sending of sales catalogs or other forms of advertising because it was an undue burden on interstate commerce); *see Bullock v. Lone Star Gas Co.,* 567 S.W.2d 493, 497 (Tex.), cert. denied, 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978); *Bullock v. Delta Industrial Construction Co.,* 668 S.W.2d 502 (Tex.App.1984, no writ); *see generally,* 85 C.J.S. Taxation § 1231 (Supp. 1990); Advisory Commission on Intergovernmental Relations, State and Local Taxation of Out-of-State Mail Order Sales (1986).

■ In Texas, sales and use taxes are transaction taxes. *Calvert v. Canteen Co.,* 371 S.W.2d 556, 558 (Tex.1963). Both vendors and purchasers are liable to the state for these taxes. *Id.; Delta Industrial,* 668 S.W.2d at 504. The sales tax in Texas is not a retailer's occupation tax. *See Ameri-*

*can Transfer and Storage Co. v. Bullock,* 525 S.W.2d 918, 923 (Tex.Civ.App.1975, writ ref'd).

In 1967, an attorney general opinion said that the sales tax could be collected from either the purchaser or the seller. Op.Tex. Att'y Gen. No. M–165 (1967). The Comptroller's rules have provided since 1975 that the tax may be collected from the seller or purchaser or both until the tax has been paid:

> Both sellers and purchasers are subject to audit and assessment of tax on any transactions on which tax was due but has not been paid. The Comptroller may proceed against either the seller or the purchaser, or against both, until the tax, penalty and interest has been paid.

Comptroller Rule 3.282, 34 T.A.C. 3.282 (effective 12/15/75).

This administrative interpretation has been in effect through amendments of the statute. The legislature is deemed to have accepted an administrative interpretation or policy that endured through amendments of the statute in question. *Bullock v. House of Lloyd,* 797 S.W.2d 133 (Tex. App.—Austin, 1990); *Calvert v. Houston Lighting & Power Co.,* 369 S.W.2d 502, 509–510 (Tex.Civ.App.1963, writ ref'd n.r. e.).

Foley argues that the structure of the Tax Code supports its position that it is liable only for use, not sales tax. However, the section in question, 151.515, that Foley's contends is limited to use tax, does not appear in the subchapter devoted to use tax. Rather it appears in subchapter J, "Tax Determinations," which applies to both sales and use taxes. When it was intended that a section apply to only sales or use, the Code referred to a particular subchapter, not to "this chapter." *See, e.g.,* § 151.410 referring to the "tax imposed by subchapter C."

That a retailer fails to add tax to the bill does not mean it is not due and owing. See *Reaves & Becker v. Wilkes,* 392 S.W.2d 379, 380 (Tex.Civ.App.1965, writ dism'd) (that retailer did not charge tax at time of sale did not mean was not due and could not be collected later). That a seller de-

faults on its obligations should not prevent the State from collecting the tax owed by the purchaser. *Delta Industrial,* 668 S.W.2d at 504. We will sustain points one and three.

## AUDIT PROCEDURE AND SAMPLING

Several points of error address the audit techniques used. Points five, six, nine, and ten deal with the contention that the sampling methods were invalid. Point four deals with the contention that the Comptroller must first proceed against the vendor to collect the tax. First, as a preliminary factual matter, the entire audit was not a sample and projection audit. Purchases were audited (both in and out of state vendors). Capital assets, however, were given a detailed audit. Expense items were the schedules which used sample and projection techniques. This was the auditor's uncontradicted testimony, was confirmed in Foley's testimony, and is also clear from the audit, which was entered into evidence.

Section 111.0042 controls sampling procedures. At the time of the audit, the taxpayer's consent was not required. This section imposes a requirement that the sample is to reflect the normal conditions under which the business was operated during the audit period. If a transaction is non-representative of the business, the transaction is not to be considered in the sample and is to be separately assessed in the audit. The *taxpayer* must show that a transaction is not representative. If the *taxpayer* demonstrates that any sampling method used by the comptroller was not in accordance with generally recognized sampling techniques, the audit is dismissed as to that portion of the audit established by projection based on the sampling method, and a new audit performed. The Comptroller has as much interest as the taxpayer in having the sampling methods used for audits be reliable and representative. After all, an unrepresentative sample could underestimate, as well as overestimate, the taxpayer's liability.

■ In an attempt to avoid taxing the same transaction twice, the Comptroller tries to ascertain if any of the vendors have been audited and if it is possible to identify a specific transaction as already having been taxed. However, the audit is being conducted on Foley as a taxpayer and is based on Foley's books and records. Foley's had the power to protect itself by paying the tax and keeping records of that payment. Foley's representative admitted that one way for Foley to have protected itself was to have paid the tax and kept proof. The Tax Code also establishes a procedure by which vendors and purchasers who discover that tax has been paid twice on a transaction can secure a refund.

■ The above-cited Attorney General opinion places the burden of showing tax has already been paid on the taxpayer. Op.Tex.Att'y Gen. No. M–165 (1967). This is in accordance with the principle that the taxpayer must show the refund amount to which it is entitled. *Dorchester Gas Producing Co. v. Bullock,* 668 S.W.2d 422, 424 (Tex.App.1984, writ ref'd n.r.e.). It is also in accordance with the general principle that the Comptroller's deficiency determination is prima facie correct, and the taxpayer must disprove it. See *Baker v. Bullock,* 529 S.W.2d 279 (Tex.Civ.App.1975, writ ref'd n.r.e.) (sample audit; taxpayer gave several reasons why thought was wrong; court upheld j.n.o.v. on the basis that allegations that method was incorrect or inapplicable were insufficient as a matter of law to raise a defense to an audit). And, without a requirement that a taxpayer disprove an audit by documentation, the regulatory scheme requiring taxpayers to keep books and records would be vitiated. *Hylton v. State,* 665 S.W.2d 571, 573 (Tex. App.1984, no writ). We find no basis for the contention that the Comptroller must collect tax from the vendor first. We sustain points four, five, and nine.

## DETRIMENTAL RELIANCE

■ In points of error seven and eight, the Comptroller complains of the findings that Foley's relied to its detriment on the Comptroller's "Texas Vendor's Policy" in effect for the years 1978 to 1982. Foley's own testimony, however, shows that it did

not rely on any Comptroller's audit procedure, policy, or rule. Rather, it relied on its own interpretation of Texas tax law to the effect that when it purchased items in Texas from a Texas vendor, tax was owed by the vendor and should be collected only from the vendor. From the testimony of appellee's representative, its interpretation continued to be followed after the recision of the Texas Vendor's policy and after the audit. We need not reach any questions whether it would be possible to estop the tax collection, or whether the Comptroller ever had the power to implement the Texas Vendor's Policy in the first place. Foley simply did not rely on that policy. We sustain point seven.

### DECLARATORY JUDGMENT

The Comptroller, in point of error thirteen, complains of the trial court's overruling of its plea to the jurisdiction, based on the unavailability of declaratory judgment as a remedy in a tax case. The trial court's judgment granted the relief of a refund but declared nothing with regard to any statute or rule. The point of error is moot.[3]

Because of our disposition of the cause, we need not consider points of error ten and fourteen.

We will reverse the trial court's judgment, and render judgment that the appellee take nothing as a refund of taxes paid.

---

3. We note that this court has dealt with the issue of declaratory judgments in tax cases in the recent cases of *Hammerman and Gainer v. Bullock,* 791 S.W.2d 330 (Tex.App.1990) and the companion cases of *Bullock v. Marathon Oil Company and Bullock v. Marathon Petroleum Company,* 798 S.W.2d 353 (Tex.App.—Austin, 1990).