TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00458-CV







John Sharp, Comptroller of Public Accounts for the State of Texas; and


Dan Morales, Attorney General of the State of Texas, Appellants




v.




Morton Buildings, Inc., Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 91-13867, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING 






 Morton Buildings, Inc. ("Morton") sued to recoup use taxes paid on building components
brought to Texas to compose prefabricated buildings in Texas. Morton, with Comptroller John Sharp and
Attorney General Dan Morales ("the State"), filed stipulations of fact. Both sides moved for partial
summary judgment. The trial court granted Morton's motion, denied the State's motion, and, after
receiving supplemental stipulations regarding the tax refund owed, rendered judgment based on the partial
summary judgment. The State appeals, contending that the trial court should have granted its motion for
partial summary judgment and denied Morton's motion. We will affirm the judgment.


BACKGROUND


Factual summary

 This summary is condensed from the parties' stipulations. Morton has its principal place
of business in Illinois. It manufactures, sells, and installs prefabricated, timber-framed, metal-sheathed
buildings primarily used in farming and industry. Morton sells directly to the consumer without
intermediaries like lumber yards, dealers, or retailers. Buyers can customize the basic building with choices
such as window and door placement. The order forms are sent to the Illinois headquarters where the
building components are assembled for shipping to Texas.

 Morton forms the building components from raw materials purchased from sellers outside
of Texas. Morton takes the lumber, plywood, paint, and steel and manufactures trusses, columns, doors,
and rafters, among other items. The various manufacturing processes for wooden items generally consist
of cutting the lumber to the right lengths, attaching the pieces with steel plates secured by nails, and
laminating if necessary; Morton corrugates metal panels. Morton occasionally purchases already-made
windows and doors. (1) Morton's factories are all located outside of Texas.

 The building components are shipped to the site in Texas where they are stored for one to
three days, awaiting the Morton employees who affix them to the ground and assemble the building. The
building process takes four or five days. The buyer pays Morton a lump sum that includes the costs of both
the components and the assembly.


Relevant statutes and code provisions

 Texas imposes a use tax "on the storage, use, or other consumption in this state of a taxable
item purchased from a retailer for storage, use, or other consumption in this state." Tex. Tax Code Ann.
§ 151.101(a) (West 1992). The building components are "taxable items" as defined by the statute. See
Tax Code §§ 151.009, 151.010.

 Both the administrative code and the tax code have special rules for lump-sum contractors. 
The administrative code deems lump-sum contractors "consumers of all materials, supplies, and equipment
used or incorporated into a customer's property. As a consumer, a contractor must pay tax to suppliers
at the time the materials are purchased." Tex. Admin. Code § 3.291(b)(2)(A) (1983). (2) The underlying
tax code provision similarly deems them consumers of tangible personal property they furnish and
incorporate into the property of their customers if the contract between the contractors and their customers
contains a lump-sum price covering both the performance of the service and the furnishing of the necessary
incidental material. Tex. Tax Code Ann. § 151.056(a) (West 1992).



The cross-motions for partial summary judgment

 Both motions for partial summary judgment relied on the stipulated facts. Morton noted
that the use tax could be imposed only on items of tangible personal property purchased for use, storage,
or consumption in Texas. Morton contended that the stipulated facts conclusively established that the raw
materials were purchased and used, stored, or consumed outside of Texas when they were converted into
building components. Morton argued that the State could not tax the raw materials because they were not
used here, and the State could not tax the building components because they were not purchased.

 The State contended in its motion that the items Morton brought into Texas were raw
materials purchased for use in Texas. As a lump-sum contractor, Morton consumed the raw materials in
Texas when it incorporated its materials into the property of the buyer. The tax was therefore proper.

 The trial court granted summary judgment that Morton was entitled to refund of use taxes
paid with respect to all raw materials used outside of Texas in Morton's manufacturing process. The
parties then stipulated to the amount of refund due for use taxes Morton paid from August 1, 1984 through
June 30, 1989. In its final judgment, the court awarded Morton the stipulated amount ($264,237.81), plus
interest.


DISCUSSION


 We review to determine whether either party proved the absence of issues of material fact
and entitlement to judgment as a matter of law. See Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex.1985); see also Tex. R. Civ. P. 166a. When both parties move for summary
judgment, each must carry its own burden of proof. Benchmark Bank v. State Farm Lloyds, 893
S.W.2d 649, 650 (Tex. App.--Dallas 1994, no writ). Any ambiguity in tax statutes must be construed
against the State and for the taxpayer. Geomap Co. v. Bullock, 691 S.W.2d 98, 100 (Tex. App.--Austin
1985, writ ref'd n.r.e.).

 The critical issue is whether the whole is different from the sum of the parts. If Morton's
combination of the raw materials into building components created new taxable items, then Morton owed
no use tax because it manufactured, rather than purchased, the building components it brought into Texas. 
The State taxes items purchased from retailers out-of-state for use in Texas, but does not tax items
manufactured by the user for use in Texas. Conversely, if the building components are nothing more than
conjoined raw materials, then the State correctly assessed use tax on the items used in Texas.

 Courts in other states are split on this critical issue. Some have decided that the
manufacturing process is merely a preliminary step in the process enabling the use of the raw materials in
their state. Morton Buildings, Inc. v. Comm'r of Revenue, 488 N.W.2d 254, 258 (Minn. 1992)
("Despite their alteration at the factories, the raw materials, in their altered form as building components,
are used in Minnesota when they are erected into prefabricated buildings."); see also Rabren v. Radio
Corp. of America, 252 So.2d 55, 58 (no distinction between property purchased at retail and property
user manufactures from property purchased at retail); American Can Co. v. Dep't of Revenue, 267
N.E.2d 657, 659 (Ill. 1971) (Materials purchased outside Illinois with intent that materials would be
processed and used in Illinois and other States were taxable because "[t]heir principal and permanent use
was intended to be and has been in Illinois and other States as machinery and parts."); Chicago Bridge
& Iron Co. v. Johnson, 119 P.2d 945, 948 (Cal. 1941). Courts in other states have decided that the
manufacturing process causes the raw materials to lose their identity and converts them into property with
a different identity from its ingredients. Morton Buildings, Inc. v. Chu, 510 N.Y.S.2d 320, 321 (App.
Div., 3d Dist. 1987), aff'd 513 N.E.2d 1304 (N.Y. 1987) ("By its nature, manufacturing results in raw
materials losing their identity"); Morton Buildings, Inc. v. Bannon, 607 A.2d 424, 430 (Conn. 1992); see
also Int'l Business Mach. Corp. v. David, 408 S.W.2d 833, 836 (Mo. 1966) (computers IBM
manufactured out of state but used in state not subject to use tax because not purchased out of state;
constituent raw materials not identifiable as such in state not taxable); Comptroller of the Treasury v.
American Can Co., 117 A.2d 559, 560-61 (Md. 1955) ("To interpret the use of the finished product as
a use of the raw materials disregards the fact that before the use began the raw materials had been
converted into tangible personal property of a different nature and utility. . . . We find nothing in the
language of the taxing Act that would justify the dissolution of the product into its component parts, despite
the mathematical principle that the whole is the sum of its parts.").

 We conclude that the building components are distinct from their constituent raw materials. 
The trusses and other components are something more than pieces of steel and lumber. Because the
lumber and steel are not used in their raw form in Texas but instead are used after their transformation into
building components, they are not taxable. Because Morton did not purchase the building components,
the components are not taxable. Our conclusion that the manufacturing process converts the raw materials
into something else also blunts the State's argument that the raw materials can be used both out of state and
in state. Because the raw materials no longer exist, they are not put to a taxable use in Texas.

 Morton's status as a lump-sum contractor does not alter our conclusion. Even if Morton
is thus defined as the "user" of the goods, Morton is not using goods that it purchased. Texas therefore
cannot tax the goods under its current taxation scheme.

 We recognize that our holding gives an advantage to companies doing business like
Morton. As the Maryland supreme court wrote, "the function of closing loopholes belongs to the
Legislature and not the courts." Id. at 561.

 Nor are we persuaded that the storage of the building components at the job site exposes
Morton to the storage aspect of the use tax. This Court decided the contrary under the predecessor of the
codified use tax. See Bullock v. Shell Pipeline Corp., 671 S.W.2d 715 (Tex. App.--Austin 1984, writ
ref'd n.r.e.). Shell delivered its imported pipe directly to the construction site. Workers inspected, aligned,
welded, coated, laid, and tested the pipe. The pipe was installed within three to five days of its arrival at
the site. Id. at 717. This Court determined that the pipe was not "stored" for purposes of the use tax
because it was not retained for future use, but was brought directly to the job site and installed as
expeditiously as possible. Id. at 719. The stipulations in this case describe a very similar importation and
installation schedule. We likewise conclude that the building components were not stored within the
meaning of the use tax.

 The trial court did not err in granting summary judgment to Morton based on the stipulated
facts, nor did it err in denying the State's competing motion for summary judgment. We overrule points
one and two.

 We affirm the judgment of the trial court.



 

 Marilyn Aboussie, Justice


Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: June 19, 1997

Publish

1. When Morton purchases preformed components, it pays either use tax (on out-of-state purchases)
or sales tax (on in-state purchases). It did not recover refund of these taxes at trial and does not seek to
recover them on appeal.
2. The current administrative code retains a virtually identical provision. See Tex. Admin. Code §
3.291(a)(3)(A) (1997). It adds the following sentence: "If the materials are purchased from an out-of-state
seller, a contractor must accrue and remit use tax on the materials unless Texas use tax was collected by
the out-of-state seller."


able as such in state not taxable); Comptroller of the Treasury v.
American Can Co., 117 A.2d 559, 560-61 (Md. 1955) ("To interpret the use of the finished product as
a use of the raw materials disregards the fact that before the use began the raw materials had been
converted into tangible personal property of a different nature and utility. . . . We find nothing in the
language of the taxing Act that would justify the dissolution of the product into its component parts, despite
the mathematical principle that the whole is the sum of its parts.").

 We conclude that the building components are distinct from their constituent raw materials. 
The trusses and other components are something more than pieces of steel and lumber. Because the
lumber and steel are not used in their raw form in Texas but instead are used after their transformation into
building components, they are not taxable. Because Morton did not purchase the building components,
the components are not taxable. Our conclusion that the manufacturing process converts the raw materials
into something else also blunts the State's argument that the raw materials can be used both out of state and
in state. Because the raw materials no longer exist, they are not put to a taxable use in Texas.

 Morton's status as a lump-sum contractor does not alter our conclusion. Even if Morton
is thus defined as the "user" of the goods, Morton is not using goods that it purchased. Texas therefore
cannot tax the goods under its current taxation scheme.

 We recognize that our holding gives an advantage to companies doing business like
Morton. As the Maryland supreme court wrote, "the function of closing loopholes belongs to the
Legislature and not the courts." Id. at 561.

 Nor are we persuaded that the storage of the building components at the job site exposes
Morton to the storage aspect of the use tax. This Court decided the contrary under the predecessor of the
codified use tax. See Bullock v. Shell Pipeline Corp., 671 S.W.2d 715 (Tex. App.--Austin 1984, writ
ref'd n.r.e.). Shell delivered its imported pipe directly to the construction site. Workers inspected, aligned,
welded, coated, laid, and tested the pipe. The pipe was installed within three to five days of its arrival at
the site. Id. at 717. This Court determined that the pipe was not "stored" for purposes of the use tax
because it was not retained for future use, but was brought directly to the job site and installed as
expeditiously as possible. Id. at 719. The stipulations in this case describe a very similar importation and
installation schedule. We likewise conclude that the building components were not stored within the
meaning of the use tax.

 The trial court did not err in granting summary judgment to Morton based on the stipulated
facts, nor did it err in denying the State's competing motion for summary judgment. We overrule points
one and two.

 We affirm the judgment of the trial court.



 

 Marilyn Aboussie, Justice


Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: June 19, 1997

Publish

1. When Morton purchases preformed components, it pays either use tax (on out-of-state purchases)
or sales tax (on in-state purchases). It did not recover refund of these taxes at trial and does not seek to
recover them on appeal.
2. The current administrative code retains a virtually identical provision. See Tex. Admin. Cod