TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





ON MOTION FOR REHEARING








NO. 03-03-00729-CV






The May Department Stores Company, Appellant


v.


Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas,

and Greg Abbott, Attorney General of the State of Texas, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT

NO. GN300583, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 Our opinion and judgment issued on July 15, 2004 are withdrawn, and the following
opinion is substituted. We overrule the motion for rehearing.

 In this case, we must decide whether charges for out-of-state printing of materials
advertising a Texas department store, mailed to prospective customers in Texas, are subject to the
Texas use tax. Appellant The May Department Stores Company seeks a refund of use taxes paid on
charges to print materials advertising its Foley's division. May contends that because it is entitled
to a refund, the district court erred in denying its motion for summary judgment and granting
summary judgment in favor of appellees, Carole Keeton Strayhorn, Comptroller of Public Accounts
of the State of Texas, and Greg Abbott, Attorney General of the State of Texas (collectively,
"Comptroller"). (1)

 May asserts that the printing is not subject to the use tax because May manufactured
the advertising materials from raw materials outside of Texas, and the rule under which the
Comptroller imposed the tax conflicts with the plain meaning of the tax code or does not apply. See
34 Tex. Admin. Code § 3.346(b)(3)(A) (West 2004) (imposing use tax on "[s]hipments of taxable
items from out-of-state suppliers to purchaser's designees"). May further contends that the printing
does not satisfy the statutory elements in tax code section 151.101(a), which defines the parameters
for imposition of the use tax. See Tex. Tax Code Ann. § 151.101(a) (West 2002). Because we find
that rule 3.346(b)(3)(A) is valid and applicable and that the out-of-state printing of advertising
materials mailed to prospective customers in Texas is subject to the Texas use tax, we affirm the
judgment of the district court.


BACKGROUND


 At issue are use taxes in the amount of $595,198.90 paid for the tax audit period of
April 1, 1996 through March 31, 1999. The Comptroller imposed the tax on out-of-state printing
to produce advertising materials that were mailed to Texas either: directly to prospective customers;
to a mailing company that in turn mailed the advertisements to prospective customers; or, for a small
percentage of the materials, to Foley's stores and offices. May bought the bulk paper for the
advertisements, designed the advertisements, and then paid out-of-state printers to print the
advertisements. According to one of May's representatives, an express purpose for the advertising
was to increase sales in the Foley's stores. For example, some of the advertising contained discount
coupons that customers could use only for in-store purchases, not for mail or telephone orders.

 May paid the tax and then sought a refund of taxes paid on the bulk paper and
printing. The Comptroller refunded the tax paid on the bulk paper because the paper is a non-taxable
raw material transformed into another item before reaching Texas. See Sharp v. Morton Bldgs., Inc.,
953 S.W.2d 300, 303 (Tex. App.--Austin 1997, pet. denied) (holding that when raw materials are
transformed into other items out-of-state, those raw materials cannot be put to a taxable use in Texas
because they no longer exist). The Comptroller determined, however, that the printing was still
subject to the use tax because May used the products of the printing in Texas. May then requested
an administrative hearing, in which an administrative law judge (ALJ) recommended upholding the
partial denial of the refund request. The Comptroller adopted the ALJ's recommendation.

 May next filed suit in a Travis County district court against the Comptroller for a
refund of the disputed taxes. See Tex. Tax Code Ann. §§ 112.001, .151 (West 2002). Both parties
filed cross-motions for summary judgment, May against and the Comptroller in favor of statutory
authorization for assessment of the tax. The district court, without stating the grounds for its rulings,
granted the Comptroller's motion, denied May's motion, and ordered that the Comptroller retain the
funds at issue. We will begin with a discussion of the applicable standards of review on appeal.

STANDARD OF REVIEW


Summary Judgment

 The standards for review of a rule 166a(c) summary judgment are well established: 
the movant must show there is no genuine issue of material fact and that it is entitled to judgment
as a matter of law. See Tex. R. Civ. P. 166a(c); Southwestern Elec. Power Co. v. Grant, 73 S.W.3d
211, 215 (Tex. 2002); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985).
Generally, a party cannot appeal the denial of a motion for summary judgment because it is an
interlocutory order and thus not appealable. See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623,
625 (Tex. 1996). However, when both parties move for summary judgment and the district court
grants one motion and denies the other, the unsuccessful party may appeal both the prevailing party's
motion and the denial of its own. See Holmes v. Morales, 924 S.W.2d 920, 922 (Tex. 1996). We
review the summary judgment evidence presented by both sides, determine all questions presented,
and render such judgment as the trial court should have rendered. Commissioners Court v. Agan,
940 S.W.2d 77, 81 (Tex. 1997). When, as here, the trial court does not state the basis for its decision
in its order, we review each ground asserted in the motion and affirm the trial court's judgment if
any of the grounds are meritorious. See Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473 (Tex.
1995).


Statutory Construction

 The parties rely on statutory and administrative provisions to support their entitlement
to summary judgment. We will thus employ well-settled principles of statutory construction. In
general, matters of statutory construction are questions of law rather than issues of fact, City of
Garland v. Dallas Morning News, 22 S.W.3d 351, 357 (Tex. 2000), to which we apply a de novo
standard of review. Bragg v. Edwards Aquifer Auth., 71 S.W.3d 729, 734 (Tex. 2002). We must
ascertain and give effect to the legislature's intent for the provision we are construing. Tex. Gov't
Code Ann. § 312.005 (West 1998); State v. Gonzales, 82 S.W.3d 322, 327 (Tex. 2002); Fleming
Foods of Tex., Inc. v. Rylander, 6 S.W.3d 278, 284 (Tex. 1999). We construe the text of an
administrative rule under the same principles as if it were a statute. Phillips Petroleum Co. v. Texas
Comm'n on Envtl. Quality, 121 S.W.3d 502, 507 (Tex. App.--Austin 2003, no pet.) (citing Texas
Gen. Indem. Co. v. Texas Workers' Comp. Comm'n, 36 S.W.3d 635, 641 (Tex. App.--Austin 2000,
no pet.)).

 We look first to the "plain and common meaning of the statute's words." Fitzgerald
v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 865 (Tex. 1999) (quoting Liberty Mut. Ins.
Co. v. Garrison Contractors, Inc., 966 S.W.2d 482, 484 (Tex. 1998)). If the meaning of a statute
is unambiguous, we generally interpret the statute according to its plain meaning. Id. at 865. We
determine legislative intent from the entire act, not simply from isolated portions. Jones v. Fowler,
969 S.W.2d 429, 432 (Tex. 1998) (citing Acker v. Texas Water Comm'n, 790 S.W.2d 299, 301 (Tex.
1990)). We read every word, phrase, and expression in a statute as if it were deliberately chosen,
and presume the words excluded from the statute are done so purposefully. See Gables Realty Ltd.
P'ship v. Travis Cent. Appraisal Dist., 81 S.W.3d 869, 873 (Tex. App.--Austin 2002, pet. denied);
City of Austin v. Quick, 930 S.W.2d 678, 687 (Tex. App.--Austin 1996) (citing Cameron v. Terrell
& Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981)), aff'd, 7 S.W.3d 109 (Tex. 1999).

 In construing a statute, we give serious consideration to an agency's construction of
a statute, as long as the construction is reasonable and does not contradict the plain language of the
statute. Continental Cas. Co. v. Downs, 81 S.W.3d 803, 807 (Tex. 2002) (citing Tarrant Appraisal
Dist. v. Moore, 845 S.W.2d 820, 823 (Tex. 1993)). We recognize that the legislature intends an
agency created to centralize expertise in a certain regulatory area "be given a large degree of latitude
in the methods it uses to accomplish its regulatory function." Reliant Energy, Inc. v. Public Util.
Comm'n, 62 S.W.3d 833, 838 (Tex. App.--Austin 2001, no pet.) (citing State v. Public Util.
Comm'n, 883 S.W.2d 190, 197 (Tex. 1994)). Courts, however, "do not defer to administrative
interpretation in regard to questions which do not lie within administrative expertise, or deal with
a nontechnical question of law." Rylander v. Fisher Controls Int'l, Inc., 45 S.W.3d 291, 302 (Tex.
App.--Austin 2001, no pet.) (quoting 2B Norman J. Singer, Sutherland Statutory Construction
§ 49:04, at 23-24 (6th ed. 2000)).

 The parties disagree about how we are to construe the taxation statutes at issue. May
urges that statutes imposing a tax must be strictly construed against the taxing authority and liberally
construed in favor of the taxpayer. Upjohn Co. v. Rylander, 38 S.W.3d 600, 606 (Tex.
App.--Austin 2000, pet. denied). The Comptroller counters that May seeks an exemption, which
is strictly construed against the taxpayer. See North Alamo Water Supply Corp. v. Willacy County
Appraisal Dist., 804 S.W.2d 894, 899 (Tex. 1991); accord Bullock v. National Bancshares Corp.,
584 S.W.2d 268, 271-72 (Tex. 1979). We agree with May. May invokes neither a statutory
exemption nor an implied exemption, but instead argues, based on its interpretation of the tax code,
against an imposition of the Texas use tax. In Morton Buildings, which also concerned the question
of whether to impose the Texas use tax, our Court strictly construed the tax statutes against the State.
953 S.W.2d at 302 ("Any ambiguity in tax statutes must be construed against the State and for the
taxpayer.") (citing Geomap Co. v. Bullock, 691 S.W.2d 98, 100 (Tex. App.--Austin 1985, writ ref'd
n.r.e.)). Accordingly, we will also apply this standard of review. We now turn to our analysis of the
applicability of the use tax in this instance.

ANALYSIS


 Section 151.101(a) of the tax code imposes a use tax "on the storage, use, or other
consumption in this state of a taxable item purchased from a retailer for storage, use, or other
consumption in this state." Tex. Tax Code Ann. § 151.101(a). In urging us to reverse the judgment
of the district court, May asserts that the statutory scheme does not allow for the imposition of use
tax on out-of-state printing. May contends that rule 3.346(b)(3)(A) is invalid because it conflicts
with the plain meaning of the tax code, which May asserts does not encompass distribution. May
argues in the alternative that rule 3.346(b)(3)(A) does not apply because the printing was not
distributed to Texas. May further asserts that the printing is not subject to the Texas use tax because
May's purchase of the printing does not satisfy any of the statutory criteria for imposition of use tax
as stated in section 151.101(a). Regarding this section, May contends that no use tax is due because
it manufactured the advertising materials from raw materials outside of Texas.

 But we do not view these provisions in isolation. Instead, we must examine the
purpose and application of the Texas use tax and the relevant statutory scheme as a whole to
determine whether the printing is subject to the tax. Upon an examination of the statutory scheme
under which the use tax is imposed, beginning with a discussion of the purpose of the use tax, we
conclude that the out-of-state printing of advertising materials mailed to prospective customers in
Texas is subject to the Texas use tax.


Purpose of the Use Tax

 "A use tax is a tax on the enjoyment of that which was purchased," McLeod v. J.E.
Dilworth Co., 322 U.S. 327, 330 (1944), and complements the sales tax. Bullock v. Lone Star Gas
Co., 567 S.W.2d 493, 497 (Tex. 1978). The use tax is designed to tax sales not reached by sales tax
and thus reaches use or consumption in the state of property purchased outside of it. Bullock v. Foley
Bros. Dry Goods Corp., 802 S.W.2d 835, 838 (Tex. App.--Austin 1990, writ denied). The purpose
of the use tax is "to more evenly distribute the tax burden among all consumers by imposing a tax
on the fruits of an interstate purchase as well as on the sale of property in the State." Lone Star Gas
Co., 567 S.W.2d at 497. A use tax serves to prevent "avoidance of a state's sales tax by the purchase
of goods in another state, and to place retailers in the state upon equal footing with out-of-state
competitors, who are not obligated to collect and remit sales tax." Foley Bros., 802 S.W.2d at 838.
Having discussed the purpose of the use tax, we turn to the statutory scheme under which the
Comptroller imposed a use tax on May's purchase of printing.


Validity and Applicability of Rule 3.346(b)(3)(A)

 We first examine rule 3.346(b)(3)(A), under which the Comptroller imposed the use
tax. May contends that this rule is invalid because it conflicts with the plain meaning of the tax code. 
"[A]n agency's construction of a statute may be considered only if it is reasonable and not
inconsistent with the statute." Fleming Foods, 6 S.W.3d at 282 (citing Moore, 845 S.W.2d at 823). 
The legislature has granted the Comptroller the authority to adopt rules "that do not conflict with the
laws of this state or the constitution of this state or the United States for the enforcement of the
provisions of this title and the collection of taxes and other revenues under this title." Tex. Tax Code
Ann. § 111.002(a) (West 2002).

 May specifically argues that rule 3.346(b)(3)(A) is invalid because it imposes use tax
on "taxable items delivered" to Texas recipients: "[u]se tax is due on taxable items purchased
outside this state by a person engaged in business in this state if the taxable items are delivered at
the direction of the purchaser to recipients in Texas designated by the purchaser." 34 Tex. Admin.
Code § 3.346(b)(3)(A). The Comptroller's authority for amending this rule in 1990 to encompass
taxable items delivered to Texas residents was D.H. Holmes Co. v. McNamara, in which the United
States Supreme Court held that the State of Louisiana could impose use tax on the delivery of
catalogs printed out of state and then mailed to Louisiana residents. 486 U.S. 24, 31-32 (1988). (2)

 May argues that the Comptroller cannot rely on D.H. Holmes because the Louisiana
use tax statute specifically included "distribution." Id. at 27. But the court's analysis did not turn
on the question of distribution. The court accepted the lower court's construction that the use tax
statute encompassed distribution. Id. at 31. Then, the court applied the four-part test articulated in
Complete Auto Transit v. Brady to sustain a tax against a Commerce Clause challenge. 430 U.S.
274, 279 (1977). Applying this test, the D.H. Holmes court determined that the tax fairly related to
the services provided by the state, did not discriminate against interstate commerce, and was fairly
apportioned to the local activities of the taxpayer. 486 U.S. at 31-32. The court further found that
the taxpayer's activities had a substantial nexus with the state. Id. at 32.

 May next contends that rule 3.346(b)(3)(A) conflicts with section 151.011(a) of the
tax code, which does not include "distribution" in the definition of "use." Act of May 31, 1981, 67th
Leg., R.S., ch. 389, § 151.011, 1981 Tex. Gen. Laws 1490, 1547 (amended 1987, 1989, and 2003)
(current version at Tex. Tax Code Ann. § 151.011(a) (West Supp. 2004)) [hereinafter "Former Tex.
Tax Code § 151.011(a)"]. We disagree. Rule 3.346(b)(3)(A) comports with the plain meaning of
the tax code, which is broad enough to encompass the mailing of items to Texas.

 Under section 151.011(a), "use" of tangible personal property "means the exercise
of a right or power incidental to the ownership of tangible personal property over tangible personal
property." Former Tex. Tax Code § 151.011(a). The statutory presumption is that "sale of a taxable
item . . . for delivery in this state" and "[t]angible personal property that is shipped or brought into
this state by a purchaser" is for storage, use, or consumption in this state. Tex. Tax Code Ann.
§§ 151.104(a), .105(a) (West 2002). Rule 3.346(b)(3)(A), which imposes use tax on "taxable items
purchased outside of this state . . . delivered at the direction of the purchaser," comes within the
ambit of sections 151.104(a) and 151.105(a). Delivery at the direction of the purchaser also falls
within the definition of use: "exercise of a right or power incidental to the ownership of tangible
personal property over tangible personal property." Former Tex. Tax Code § 151.011(a). 
Accordingly, we hold that rule 3.346(b)(3)(A) does not conflict with the plain meaning of the tax
code.

 May asserts in the alternative that because advertising materials, not the printing, were
delivered to Texas recipients, rule 3.346(b)(3)(A) does not apply. This rule imposes use tax "on
taxable items purchased outside this state by a person engaged in business in this state if the taxable
items are delivered at the direction of the purchaser to recipients in Texas designated by the
purchaser." 34 Tex. Admin. Code § 3.346(b)(3)(A). The term "taxable item" means "tangible
personal property and taxable services." Tex. Tax Code Ann. § 151.010 (West 2002). A purchase
includes "printing, or imprinting of tangible personal property." Id. § 151.005(4) (West Supp. 2004). 
Use tax is calculated based on the sales price of the taxable item. Id. § 151.101(b); see 34 Tex.
Admin. Code § 3.346(b)(3)(A) ("purchaser owes use tax based on the purchase price of the items
delivered to Texas"). Because the advertising materials are inextricably intertwined with the
printing, without which the advertising materials would not exist, the purchase price thus becomes
the cost of the printing. Accordingly, rule 3.346(b)(3)(A) applies to the printing at issue. Having
determined that this rule applies, we next address whether the charges for the printing are subject to
the Texas use tax.


Applicability of the Texas Use Tax to the Printing

 May contends that the printing is not subject to the use tax because it does not meet
the requirements of section 151.101(a) of the tax code. Included in this argument, in reliance on our
holding in Morton Buildings, is May's assertion that the printing is not subject to the use tax because
May manufactured the advertising materials from raw materials out-of-state, and then shipped the
advertising into Texas. See 953 S.W.2d at 303. We will first address whether the taxation of the
printing meets the requirements of section 151.101(a) and the overall scheme of the tax code.

 Chapter 151 of the tax code is the Limited Sales, Excise, and Use Tax Act. Tex. Tax
Code Ann. § 151.001 (West 2002). Under chapter 151, a sale or purchase includes "the production,
fabrication, processing, printing, or imprinting of tangible personal property for consumers who
directly or indirectly furnish the materials used in the production, fabrication, processing, printing,
or imprinting" when done or performed for consideration. Id. § 151.005(4). May asserts that this
provision only pertains to sales tax, not use tax. We disagree. Section 151.005 is contained within
subchapter A of chapter 151, entitled "General Provisions." These provisions apply to the provisions
that follow throughout the chapter unless otherwise stated. See Continental Cas. Ins. Co. v.
Functional Restoration Assocs., 19 S.W.3d 393, 401 (Tex. 2000) (stating that general provisions of
Workers' Compensation Act apply as a default to all other provisions of Act unless Act provides
otherwise). Additionally, section 151.005 pertains to a sale or purchase. A use tax is imposed on
"the storage, use, or other consumption in this state of a taxable item purchased from a retailer for
storage, use, or other consumption in this state." Tex. Tax Code Ann. § 151.101(a) (emphasis
added).

 The term "taxable item," as used in section 151.101, means "tangible personal
property and taxable services." Id. § 151.010. "Tangible personal property" means "personal
property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in
any other manner." Id. § 151.009 (West 2002). The Comptroller considers printing to be the sale
or purchase of tangible personal property, see Tex. Tax Code Ann. § 151.005(4), because the
"essence" of the transaction is the printed material:



 When one buys printing services or binding services, or copy services, tax is
owed--not because any of these are "taxable services," but because the statute and
a long line of cases have made it clear that the essence of these transactions (what the
purchaser really wants, and receives) is tangible personal property. It is the business
cards, the letterheads, the annual reports, the vitae or resumes, etc . . . . (3)



We give serious consideration to an agency's construction of a statute, as long as the construction
is reasonable and does not contradict the plain language of the statute. Continental Cas. Co., 81
S.W.3d at 807 (citing Moore, 845 S.W.2d at 823). Because the tax code specifically includes "the
production, fabrication, processing, printing, or imprinting of tangible personal property" in the
definition of a sale or purchase, Tex. Tax Code Ann. § 151.005(4), we find that the construction is
reasonable and does not contract the plain language of the statute. Section 151.005 includes printing
of tangible personal property, which would necessarily include printing of the advertising materials. 
Because section 151.005, which addresses both sales and purchases, applies to the use tax scheme,
May's purchase of printing constitutes the purchase of a taxable item.

 May next contends that it did not use the printing in Texas or purchase the printing
for use in Texas. "Use" of tangible personal property means "the exercise of a right or power
incidental to the ownership of tangible personal property over tangible personal property." Former
Tex. Tax Code § 151.011(a). "A sale of a taxable item by a person for delivery in this state is
presumed to be a sale for storage, use, or consumption in this state unless a resale or exemption
certificate is accepted by the seller." Tex. Tax Code Ann. § 151.104(a). May does not contend that
it is entitled to any exemption under this statute.

 In reliance on Morton Buildings, May asserts that because the transformation of rolls
of paper into advertising materials occurred out of state, "as a matter of law [May] did not use the
printing operations in Texas." In Morton Buildings, the taxpayer manufactured building components
from raw materials outside of Texas, then shipped the components to Texas and assembled them into
buildings for customers. 953 S.W.2d at 301-02. The Comptroller contended that the raw materials
were purchased for use in Texas. Id. at 302. This Court held that "[b]ecause the lumber and steel
are not used in their raw form in Texas but instead are used after their transformation into building
components, they are not taxable." Id. at 303. Following the holding in Morton Buildings, the
Comptroller in this case refunded use tax that May had paid on the bulk paper because it was a raw
material transformed into something else outside of Texas.

 Unlike in Morton Buildings, the Comptroller here is taxing the transformation--i.e.,
the printing--not the raw materials. May's argument attempts to separate the printing from the
advertising materials. But without the printing, the advertising materials would not exist. Although
May purchased the paper and provided the printers with proofs and printing instructions, it was the
printers, not May, who transformed the paper, ink, and other items into the advertising materials. 
Thus, May's involvement in the production of the materials is not analogous to Morton Buildings's
manufacture of the building components.

 May's use of the printing, which produced the advertising materials, constituted "the
exercise of a right or power incidental to the ownership of tangible personal property over tangible
personal property." Former Tex. Tax Code § 151.011(a). First, May directed either the printer or
a mailing company in Texas to mail the materials to prospective customers in Texas. Second, an
express purpose for the advertising was to increase sales in the Foley's stores. For example, included
in some of the advertisements were coupons that customers could use only in the stores. According
to May's direct mail business manager, the purpose of the coupons was to generate sales. When
using a coupon, a customer returned the coupon to a May employee, thus giving May physical
control over the advertising material. In directing the mailings to Texas, using the advertising to
encourage purchases in Texas, and taking possession of some of the coupons in Texas, May
exercised use of the printing in Texas and purchased the printing for use in Texas. See Former Tex.
Tax Code § 151.011(a); Tex. Tax Code Ann. § 151.101(a).

 May last contends, in reference to tax code section 151.101(a), that it did not purchase
the printing from a retailer. It asserts, instead, that it manufactured the advertising materials outside
of Texas, subcontracting the printing to a printer. Under the use tax scheme, "[t]angible personal
property that is shipped or brought into this state by a purchaser is presumed, in the absence of
evidence to the contrary, to have been purchased from a retailer for storage, use, or consumption in
this state." Tex. Tax Code Ann. § 151.105(a). May does not dispute that it purchased the printing
from a printer, nor has it presented any evidence to the contrary. With the presumption of purchase
from a retailer, and no evidence to the contrary, we conclude that May purchased the printing from
a retail printer. Having addressed all of the elements of section 151.011(a), we further conclude that
May's purchase of the printing falls within the definition of "use" under this section.

 The purpose of the use tax is "to more evenly distribute the tax burden among all
consumers by imposing a tax on the fruits of an interstate purchase as well as on the sale of property
in the State," Lone Star Gas Co., 567 S.W.2d at 497, serving to prevent "avoidance of a state's sales
tax by the purchase of goods in another state, and to place retailers in the state upon equal footing
with out-of-state competitors, who are not obligated to collect and remit sales tax." Foley Bros., 802
S.W.2d at 838. May agrees that printing purchased in Texas would be subject to the Texas sales tax. 
See Tex. Tax Code Ann. § 151.005(4). To hold that the Comptroller could not impose a use tax on
May's transaction would encourage people to seek out-of-state services, which would put Texas
retailers at a competitive disadvantage. That is precisely what the use tax scheme seeks to avoid. 
See Foley Bros., 802 S.W.2d at 838.

 Strictly construing the imposition of tax against the Comptroller and liberally in favor
of May, Upjohn Co., 38 S.W.3d at 606, we hold that the Comptroller's imposition of use tax on
May's purchase of out-of-state printing of advertising materials mailed to prospective customers in
Texas comports with the statutory scheme for imposition of the use tax. Accordingly, we overrule
May's issue and affirm the judgment of the district court granting summary judgment in favor of the
Comptroller and denying May's motion for summary judgment.


CONCLUSION

 Concerning May's contention that rule 3.346(b)(3)(A) conflicts with the plain
meaning of the tax code, we hold that this rule, imposing a use tax on "taxable items purchased
outside of this state . . . delivered at the direction of the purchaser," follows sections 151.104(a) and
151.105(a) of the tax code. We further hold that the rule applies to the printing at issue, which is a
taxable item under section 151.005(4) of the tax code.

 May's use of the printing, which produced the advertising materials, constituted "the
exercise of a right or power incidental to the ownership of tangible personal property over tangible
personal property." Former Tex. Tax Code § 151.011(a). After purchasing the printing from a
retailer, May directed the advertising materials to prospective customers in Texas, used the
advertising to encourage purchases in Texas, and took physical possession of some of the advertising
materials in the form of coupons that customers returned to its stores in Texas. Having found that
May's purchase of out-of-state printing of advertising materials mailed to prospective customers in
Texas is subject to the use tax, we affirm the judgment of the district court.



 

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: August 26, 2004

1. The Comptroller and the Attorney General are statutory defendants in suits for tax refunds. 
Tex. Tax Code Ann. § 112.151(b) (West 2002). Because their interests do not diverge in this case,
for convenience we will refer to them collectively as "Comptroller."
2. In the preamble to rule 3.346, the Comptroller stated that a basis for adopting the rule was
the D.H. Holmes decision:


The amendment implements recent legislation and follows a decision in which
the United States Supreme Court upheld use tax assessed by the State of
Louisiana against a purchaser doing business in Louisiana on purchases of
catalogs that were shipped from outside Louisiana to Louisiana residents. The
court held that the purchaser had sufficient business presence in Louisiana to
warrant the tax assessment and the assessment did not violate the commerce
clause of the federal constitution.


15 Tex. Reg. 7029 (1990) (codified at 34 Tex. Admin. Code § 3.346) (adopted Dec. 21, 1990).
3. Tex. Comptroller of Pub. Accounts, Hearing No. 27,942, STAR System No. 9302083H
(Feb. 18, 1993), available at http://aixtcp.cpa.state.tx.us/star/openrec2.html.