# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-07-00638-CV

**Southwestern Bell Yellow Pages, Appellant**

**v.**

**Susan Combs, Successor to Carole Strayhorn, Comptroller of Public Accounts of the State of Texas; and Greg Abbott, Attorney General of the State of Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. D-1-GN-06-004500, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Southwestern Bell Yellow Pages sued the Comptroller seeking a refund of use tax it paid on the out-of-state printing of telephone directories that were subsequently distributed in Texas. *See* Tex. Tax Code Ann. § 112.151 (West 2008) (allowing taxpayer to sue Comptroller for refund of taxes paid). Both parties moved for summary judgment and the trial court, without stating the grounds for its rulings, denied Southwestern Bell's motion and granted the Comptroller's motion. Southwestern Bell appeals, asserting that under section 151.011(a) of the tax code, use tax may not be imposed on charges for out-of-state printing services. *See id.* § 151.011(a) (West 2008). Because we have determined that section 151.011(a) does not prohibit the imposition of use tax on the printing of the telephone directories in this case, we affirm the trial court's judgment.

## BACKGROUND

In order to produce the telephone directories at issue, Southwestern Bell purchased rolls of paper from various out-of-state paper mills and directed the mills to ship the paper to out-of-state printers. The printers then used the paper to print the directories, which were ultimately distributed in Texas. Southwestern Bell paid use tax on the printing charges associated with the directories and now seeks a refund, claiming that these charges are excluded from the use tax under section 151.011(a) of the tax code. *See id.*

## STANDARD OF REVIEW

Summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as here, both parties move for summary judgment on the same issues, and the trial court grants one motion and denies the other, the appellate court considers the summary-judgment evidence presented by both sides, determines all questions presented, and if the reviewing court finds that the trial court erred, renders the judgment the trial court should have rendered. *Id*.

The question of whether Southwestern Bell is entitled to a refund turns solely on an issue of statutory construction. Statutory construction is a legal question that we review de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). In resolving an issue of statutory construction, we are required, first and foremost, to follow the plain language of the statute. *General Motors Corp. v. Bray*, 243 S.W.3d 678, 685 (Tex. App.—Austin 2007, no pet.). "If a statute is clear and unambiguous, it should be given its commonly understood meaning without resort to extrinsic aids of statutory construction." *Id.* We read every word, phrase, and expression in a statute as if it

2

were deliberately chosen, and presume that words excluded from the statute are done so purposefully. *Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied). "[P]rior law and legislative history cannot be used to alter or disregard the express terms of a code provision when its meaning is clear from the code when considered in its entirety, unless there is an error such as a typographical one." *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999). "Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute." *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993).

Statutes imposing a tax must be strictly construed against the taxing authority and liberally construed in favor of the taxpayer, *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 606 (Tex. App.—Austin 2000, pet. denied), while statutory exemptions from taxation are strictly construed against the taxpayer, *North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991). Because Southwestern Bell does not invoke an exemption, but rather argues against an imposition of the use tax, we will construe the statute strictly against the Comptroller. *See Sharp v. Morton Buildings, Inc.*, 953 S.W.2d 300, 302-03 (Tex. App.—Austin 1997, pet. denied).

**DISCUSSION**

The Texas use tax, a tax on the use or consumption of goods that are purchased out of state and brought into Texas, was designed to "more evenly distribute the tax burden among all consumers by imposing a tax on the fruits of an interstate purchase as well as on the sale of property

3

in the State." *Bullock v. Lone Star Gas Co.*, 567 S.W.2d 493, 497 (Tex. 1978). A use tax serves to prevent "avoidance of a state's sales tax by the purchase of goods in another state, and to place retailers in the state upon equal footing with out-of-state competitors, who are not obligated to collect and remit sales tax." *Bullock v. Foley Bros. Dry Goods Corp.*, 802 S.W.2d 835, 838 (Tex. App.—Austin 1990, writ denied).

Prior to 2003, section 151.011(a), in relevant part, dictated the parameters of the use tax by defining "use" as follows:

> Except as provided by Subsection (c) of this section, "use" means the exercise of a right or power incidental to the ownership of tangible personal property over tangible personal property.

Act of May 31, 1981, 67th Leg., R.S., ch. 389, § 1, 1981 Tex. Gen. Laws 1490, 1547 (amended 1987, 1989, and 2003) (current version at Tex. Tax Code Ann. § 151.011(a)).

In 2003, the legislature amended section 151.011(a) to include the underlined language below:

> Except as provided by Subsection (c) of this section, "use" means the exercise of a right or power incidental to the ownership of tangible personal property over tangible personal property, including tangible personal property other than printed material that has been processed, fabricated, or manufactured into other property or attached to or incorporated into other property transported into this state.

Tex. Tax Code Ann. § 151.011(a).

The 2003 amendment reversed the effect of *Sharp v. Morton Buildings, Inc.*, 953 S.W.2d at 303, in which this Court held that raw materials that are purchased out of state,

4

incorporated into another product out of state, and then subsequently brought into Texas are not subject to the use tax. The 2003 amendment superceded *Morton Buildings* by imposing use tax on raw materials that are purchased out of state, incorporated into another product, and then brought into Texas.

The sole issue in the present case is whether the phrase "other than printed material" in the 2003 amendment served to exclude the amounts paid by Southwestern Bell to out-of-state printers from the use tax. Southwestern Bell argues that "other than printed material" excludes printing services from the use tax altogether, while the Comptroller contends that the language was meant to exclude only the raw materials that make up printed material, such as paper and ink, while continuing to tax printing services.

At the time of the 2003 amendment, the Comptroller taxed printed material as "printing services," under the legal fiction that "printing services" were a type of tangible personal property embodied by the printed material ultimately provided to the customer. *See May Dep't Stores Co. v. Strayhorn*, No. 03-03-00729-CV, 2004 Tex. App. LEXIS 7681, at *20 (Tex. App.—Austin Aug. 26, 2004, pet. denied) (mem. op., not designated for publication).

This Court acknowledged the Comptroller's policy regarding printing services in *May*, stating, "[T]he Comptroller here is taxing the transformation—i.e., the printing—not the raw materials. May's argument attempts to separate the printing from the advertising materials. But without the printing, the advertising materials would not exist." *Id.* at *23. The *May* opinion also quoted the following language from a 1993 Comptroller administrative opinion:

5

> When one buys printing services or binding services, or copy services, tax is owed—not because any of these are "taxable services," but because . . . the essence of these transactions (what the purchaser really wants, and receives) is tangible personal property. It is the business cards, the letterheads, the annual reports, the vitae or resumes, etc.

*Id.* at *20 (quoting Tex. Comptroller of Pub. Accounts, Hearing No. 27,942, STAR System No. 9302083H (Feb. 18, 1993)). Southwestern Bell argues that in light of the legal fiction that "printed material" is tangible personal property that represents a printing services transaction, the 2003 amendment excludes charges for printing services from the use tax.

The Comptroller, on the other hand, contends that the legislative intent in amending the statute was simply to reverse the effect of *Morton Buildings* by taxing raw materials that are incorporated into other products for use in Texas, while preserving the status quo of excluding the raw materials—paper and ink—of printed materials.

Regardless of how "printed material" is defined, the plain and unambiguous language of the amended statute does not exclude all "printed material" from the use tax. As the statute reads, it excludes only printed material "that has been processed, fabricated, or manufactured into *other property* or attached to or incorporated into *other property* transported into this state." Tex. Tax Code Ann. § 151.011(a) (emphases added). Therefore, only printed material that serves as a component of some other finished product is excluded from the use tax under section 151.011(a).

In support of its argument that the 2003 amendment was intended to exclude only paper and ink, the Comptroller quotes a letter from Rep. Brian McCall, stating that the legislative intent of the amendment was to supercede *Morton Buildings* "except in so far as that decision

6

affected printed material and component parts of printed material."[1]  However, the phrase "component parts of printed material" does not appear in the statute.  Rather than excluding the component parts, such as paper and ink, of all printed material from the use tax, the legislature excluded only printed material that is itself a component part of a final product.

The statute, as written by the legislature, provides only that use tax is not imposed on printed material that has been incorporated into other property.  While the plain meaning of the 2003 amendment differs from the Comptroller's theory of the legislature's intent, we may not rewrite unambiguous legislation in an attempt to preserve legislative intent.  *See Fleming Foods*, 6 S.W.3d 278 at 285 ("We must be able to accept and to rely upon the words written by the Legislature if they are clear and unambiguous, their meaning is plain when the code in which they appear is read in its entirety, and they do not lead to absurd results.").

Southwestern Bell conceded at oral argument that the telephone directories themselves were a final product and were not incorporated into other property.  Therefore, in light of the fact that the present case does not involve "printed material that has been processed, fabricated, or manufactured into other property or attached to or incorporated into other property transported into this state," we hold that the "other than printed material" language in section 151.011(a) is inapplicable and that Southwestern Bell is not entitled to a refund of use tax paid on printing charges.

---

[1] The correspondence between the Comptroller and Rep. McCall is insufficient to establish legislative intent.  *See General Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 923 (Tex. 1993) ("[T]he intent of an individual legislator, even a statute's principal author, is not legislative history controlling the construction to be given a statute. It is at most persuasive authority as might be given the comments of any learned scholar of the subject.").

## CONCLUSION

Because Southwestern Bell is not entitled to a use tax refund, we affirm the trial court's order granting summary judgment.

_____

Diane M. Henson, Justice

Before Justices Patterson, Waldrop and Henson
  Concurring Opinion by Justice Waldrop

Affirmed

Filed:   January 30, 2009