252 So.2d 55

**Harvey L. RABREN, as Commissioner of Revenue of the State of Alabama**

**v.**

**RADIO CORPORATION OF AMERICA.**

**3 Div. 358.**

Supreme Court of Alabama.

March 18, 1971.

Rehearing Denied Sept. 9, 1971.

396

Steiner, Crum & Baker and M. R. Nachman, Jr., Montgomery, for appellee.

MacDonald Gallion, Atty. Gen., Willard W. Livingston, Asst. Atty. Gen., and Counsel, Dept. of Revenue, Herbert I. Burson, Jr., Asst. Atty. Gen., and Asst. Counsel, Dept. of Revenue, for appellant.

**COLEMAN, Justice.**

The Commissioner of Revenue appeals from a judgment wherein the circuit court ordered that a peremptory writ of mandamus issue to the Commissioner ordering him to certify to the Comptroller that the sum of $1,932.73 is to be refunded to the taxpayer, Radio Corporation of America, herein sometimes referred to as RCA, as a refund of use tax erroneously paid to the state by RCA during the period from January 29, 1964, through July 23, 1965.

The Commissioner concedes in brief that the proceeding for mandamus was properly before the trial court.

In its petition for mandamus, RCA alleges that it is a corporation duly qualified to do business as a foreign corporation in Alabama and that:

"The foregoing use taxes were erroneously paid on the components of petitioner's RCA 301 Electronic Data Processing Systems under mistake of relevant Alabama use tax law. During these years, petitioner leased these systems to Southern Bell Telephone and Telegraph Company for use in the latter's offices located in Birmingham, Alabama. Certain portions of the equipment constituting these systems were manufactured entirely by petitioner. Other portions of the equipment constituting these systems were purchased from independent suppliers for incorporation into these systems. Petitioner used as the tax base upon which it computed the use tax (now discovered to have been erroneously paid) the cost to petitioner of the materials and components entering into the completed Electronic Data Processing Systems.

"Under relevant Alabama use tax law, of which petition (sic) has now become aware, the tangible personal property which it uses in the State of Alabama, namely, the RCA 301 Electronic Data Processing Systems, was not 'purchased at retail . . . for . . . use in this state' and hence, was not subject to tax pursuant to the provisions of Title 51, Section 788, Alabama Code as amended. In short, there has been no 'purchase' within the meaning of Title 51, Section 787(i) [1] Alabama Code as amended; and accordingly, there is no transaction subject to the Alabama use tax which is, by its terms, imposed on the storage, use or other consumption of tangible personal property 'purchased' at retail. (Title 51, Section 788, Alabama Code as amended)"

Evidence was heard ore tenus. Neither party contends that the evidence is in dispute. RCA made the leased machine outside of Alabama in the State of Florida.

The evidence is to effect that RCA did purchase in one form or another the parts from which RCA made the data processing machine. Taxpayer's contention, as we understand it, was accurately stated in the trial court by taxpayer's able counsel as follows:

" . . . . We say there must be a purchase at retail by RCA of certain personal property and then if it uses that property by way of leasing it they would have to pay a Use Tax but where it man-

1. §§ 787 and 788, as pertinent, recite:
   "§ 787. . . . . (i) The term 'purchase' means acquired for a consideration, whether such acquisition was effected by a transfer of title, or of possession or of both, or a license to use or consume; whether such transfer shall have been absolute or conditional, and by whatsoever means the same shall have been effected; and whether such consideration be a price or rental in money, or by way of exchange or barter."
   "§ 788. (a) An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property . . . . purchased at retail . . . . for storage, use or other consumption in this state at the rate of four percent of the sales price of such property . . . . "

.ufactures the property and then leases it there is no taxable transaction under the Sales Tax Act because under Section 788 of Title 51 a purchase at retail is required by the user before he has to pay a Use Tax. . . . .

" . . . . . . . . . .

" . . . . What we say is, as we will show the Court, in regard to this equipment, Southern Bell didn't lease this copper and whatever this material is and this bakelite and this wire. It leased this piece of equipment and *this piece of equipment wasn't purchased by RCA*. It was manufactured by RCA and, therefore, it doesn't come within the scope of the Statute which requires a purchase at retail." (Emphasis Supplied)

In brief, the contention of the Commissioner is stated as follows:

"The Revenue Commissioner contends that Section 788, supra, and the definitions of retail sales and wholesale sales contained in Section 787, Title 51, Code of Alabama, 1940,[2] cover a manufacturer who leases a product it has manufactured for use in Alabama. . . . ."

In its judgment, the trial court said: " . . . . If RCA had purchased a date processing machine at retail and had used it in Alabama, by way of rental to Southern Bell, then it would have been subject to the Alabama Use Tax on such a transaction. . . . ."

The trial court held that RCA had not leased tangible personal property which RCA had purchased at retail but had leased property which RCA had manufactured

and that lease of such property is not subject to Alabama Use Tax.

It appears that RCA did purchase the property out of which it manufactured the data processing machine. The sale of that property to RCA is declared by § 787(e) to be a retail sales unless the sale was a wholesale sale.

RCA did not purchase that property for resale. § 787(d) declares that the term "wholesale sale" "does not include a sale . . . . to *users* or consumers, *not for resale.*" § 787(d) further recites that wholesale sale shall include a sale of tangible personal property to a manufacturer when the purchased property enters into and becomes a component part of the product which the manufacturer makes *"for resale"*; but RCA did not make the data processing machine "for resale."

The conclusion seems inescapable that, under the pertinent statutes, the purchases of the parts of the data processing machine by RCA were purchases at retail. The taxpayer's argument seems to be that, although RCA did purchase the parts at retail, RCA did not purchase the completely finished machine at retail, and, therefore, the use of the machine in Alabama is not subject to use tax.

As already stated, § 788 imposes a tax " . . . . on the . . . . use . . . . in this state of tangible personal property . . . . purchased at retail . . . . ." The tangible personal property, which went into and constitutes the data processing machine which RCA leased, was purchased at retail and its use in this state is subject to the tax imposed by § 788 unless the stat-

2. §.787, as pertinent, recites:
    "(d) The term 'wholesale sale' or 'sale at wholesale' means a sale of tangible personal property by wholesalers to licensed retail merchants, jobbers, dealers, or other wholesalers for resale and *does not include a sale by wholesalers to users or consumers, not for resale.* The term 'wholesale sale' shall include a sale of tangible personal property or products (including iron ore) to a manufacturer or compounder which enters into and becomes

an ingredient or component part of the tangible personal property or products *which he manufactures or compounds for sale* . . . .
    "(e) The term 'sale at retail' or 'retail sale' shall mean all sales of tangible personal property except those above defined as wholesale sales. The quantities of goods sold or prices at which sold are immaterial in determining whether or not a sale is at retail. . . . . " (Emphasis Supplied)

ute be deemed to contain the following provision, viz: "an excise tax is imposed on the use in this state of tangible personal property purchased at retail, *except property which the user manufactures from property which the user has purchased at retail . . . .*" No such provision appears in the statute.

The statute provides no such exception so far as we are advised. The legislature could have provided for such exception if the legislature had deemed it proper.

The legislature did provide an exemption of certain property from sales tax when sold by the manufacturer or builder thereof. Section 33 of Act No. 100, Acts of 1959, Vol. 1, pages 298, 315, 317, recites:

> "Section 33. There are exempted from the provisions of this Act and from the computation of the amount of the tax levied, assessed or payable under this Act the following:
>
> " . . . . . . . . . . .
>
> "(j) The gross proceeds of the sale or sales of railroad cars, and vessels and barges of more than fifty tons burden, when sold by the manufacturers or builders thereof."

The quoted exemption provision appears in 1958 Recompilation of the Code, Title 51, § 786(34), 1969 Pocket Parts.

Two Alabama decisions cited in the briefs are, in a sense, relevant to the instant case, to wit: Paramount-Richards Theatres v. State, 256 Ala. 515, 55 So.2d 812, and State v. Southern Saw Service, 256 Ala. 546, 55 So.2d 828. *Paramount-Richards* was delivered June 28, 1951, and the first rehearing was granted in *Southern Saw* the same day.

In *Paramount-Richards*, the taxpayer was engaged in the business of operating motion picture theatres in Mobile. The state sought to impose on taxpayer a tax computed as a percentage of the rental paid by taxpayer to motion picture producers as rental or license for the privilege of exhibiting films leased by taxpayer from the producers. This court held that taxpayer was not liable for the tax and said:

> " . . . . And since this taxpayer's business is specifically and separately subjected to a tax under the Sales Tax Act in Section 753(b) to the extent of 2% of the entire gross receipts of such business, and the pictures produced from the films constitute, in a sense, this taxpayer's stock in trade, there is no reason to assume that the legislature intended also to tax the rental or the license fees paid by this taxpayer for the privilege of exhibiting such photoplays." (256 Ala. at 530, 55 So.2d at 824)

In *Southern Saw*, the taxpayer was engaged in selling certain machines, and also in furnishing sharpened saws, blades, and other meat cutting equipment to the operators of butcher shops in Alabama. The state made a use tax assessment against taxpayer who contended that the machines sold and the sharpened equipment furnished or rented were exempt from sales or use tax because the machines and equipment were used in processing and manufacturing tangible personal property for sale and were, under the statute, specifically exempt from such tax. This court held that the machines and equipment were not within the exemption claimed by taxpayer. The point relevant to the instant case is the other holding which relates to the use tax assessment levied against taxpayer for the leasing and rental of sharpened saws and other meat cutting tools. On original deliverance, the court said:

> " . . . . The basis of the levy against the taxpayer, Southern Saw Service Inc., is the fixed charge for the use by its customers of such sharpened implements loaned and delivered by it to its customers in Alabama." (256 Ala. at 549, 55 So.2d at 831)

On rehearing, however, the majority of the court held that the rentals collected by

taxpayer were not the proper basis for the use tax to be paid by taxpayer. The court said:

"On original deliverance in this case we held that appellee was the taxpayer under the circumstance presented by the record, and that the measure of the tax was the rentals received by it from its customers in the state of Alabama.

"On rehearing the majority of the court have receded from that holding as to the measure of the tax. All of the Justices agree that appellee is the consumer and therefore the taxpayer. But the majority of the court now hold that the tax must be based on the retail sales price of the tangible personal property purchased outside of Alabama, for use by the taxpayer in Alabama. Section 787, Title 51, Code of 1940. See Paramount-Richards Theatres, Inc. v. State of Alabama, Ala., 256 Ala. 515, 55 So. 2d 812." (256 Ala. at 549, 550, 55 So. 2d at 832)

In *Southern Saw,* no point was made as to whether the taxpayer had purchased or manufactured the instruments which taxpayer sharpened and rented to the butcher shops. Examination of the original record on file in this court shows that taxpayer's witness testifying with reference to the blades or knives taxpayer furnished said: "We made one out of alloy steel . . . ." (Tr. 40); and that six percent of taxpayer's cost of operation " . . . . was for making saws, blades, plates and knives," the other ninety-four percent "went" for sharpening service. (Tr. 46) In the original opinion, it is said that the taxable event " . . . . is the use by the taxpayer of sharpened saw blades, cutters and knives *produced* in its shops in Atlanta, Georgia, and distributed to some 3000 users in this state." (Emphasis Supplied) (256 Ala. at 549, 55 So.2d at 831) It thus seems probable that taxpayer in *Southern Saw* did manufacture the product which taxpayer leased in Alabama, but the question was not presented to the court as to whether the fact of manufacture by taxpayer, instead of purchase, made taxpayer not liable for use tax.

A California case appears to be helpful on the question whether RCA is not liable for the use tax because it did not purchase the data processing systems in finished form.

In Chicago Bridge & Iron Co. v. Johnson, 19 Cal.2d 162, 119 P.2d 945, a foreign corporation was qualified to do business in California and was engaged in the sale of steel tanks. The corporation, the taxpayer, purchased the raw materials and manufactured the tanks in another state. Because of the size of the tanks, they were shipped "knocked down" to the customers' premises and there installed by workmen employed by the taxpayer. The Supreme Court of California held that the California Use Tax, imposed upon the "storage, use or other consumption in this State of tangible personal property purchased from a retailer . . . . ," was applicable to the purchase of raw materials outside the state for manufacturing tanks to be erected in California. The taxpayer contended that the tangible personal property (the tanks), the storage or use of which was taxed, was not purchased by taxpayer but was manufactured by it. The court rejected taxpayer's contention and held that the tanks had been purchased by taxpayer and that taxpayer was liable for use tax to be computed upon the sales price of the materials to the taxpayer. Taxpayer was plaintiff in the action to recover use tax paid under protest.[3]

3. The California Court said:
"It is conceded by defendant before a storage, use or other consumption comes within the terms of the act and is thereby taxable, five conditions must be met: (1) The tangible personal property stored or used must be purchased by the storer or user. (2) The purchase must have been made from a retailer. (3) The purchase must have been made on or after July 1, 1935. (4) The property must have been purchased for use or storage in this

We conclude that RCA did purchase at retail the materials out of which RCA manufactured the leased machine; that the lease of the materials in the finished form is a use of those materials in Alabama by RCA subject to use tax; and that the basis upon which use tax is to be computed is the cost or sales price to RCA for those materials.

It follows that RCA is not entitled to refund of the tax paid, which was computed on the basis of the cost of the materials to RCA, and that the judgment granting the writ of mandamus is in error.

The judgment is reversed and the cause remanded to the trial court with directions that a judgment be entered denying the petition for mandamus.

It has not been made to appear that Use Tax Regulation No. L5–022 is in conflict with the statutes cited above. The Regulation was first issued "9–30–52" and amended January 20, 1966.[4] The amendments do not relate to the instant case.

Reversed and remanded with directions.

SIMPSON, HARWOOD, BLOODWORTH, and McCALL, JJ., concur.

---

state. (5) The property must have been used or stored in this state. There is no question that the second, third and fifth conditions have been satisfied in this case. The retention of the 'knocked down' tanks in this state pending their installation and the installation thereof would constitute the necessary storage and use. Plaintiff asserts, however, that the tangible personal property (the tanks), the storage or use of which was taxed, was not purchased by it, but on the contrary was manufactured by it. The fallacy of that argument lies chiefly in its inaccurate assumption with respect to the property used or stored and thereby taxed. It is quite true that the tanks, or the completed but unassembled parts, which were shipped to this state were not purchased by the plaintiff in that form; they were manufactured by it. It acquired the raw materials out of which it manufactured or fabricated those completed parts, and it is the storage and use of those materials upon which the tax is based. The tax was computed upon the cost, that is, the sales price of these materials to plaintiff, and that is the price which it paid for them. The fabrication and construction of these materials into the completed articles undoubtedly enhanced their value, but the tax is not calculated on that value. It is based on the sales price to plaintiff of the materials which were used to fabricate the finished product which materials were undeniably purchased by plaintiff. The sales to plaintiff of the materials were not made for resale in California; rather they were sold to it to be fabricated by it and stored and used in this state. It was selling the completed tanks erected on the purchaser's premises, not the materials it had purchased for fabrication. It would appear that if the materials were purchased in California and used in a plant maintained here for the manufacture of tanks, the sale of the materials to it would be subject to the California sales tax. If the complete coverage and complementary nature of the sales tax and the use tax are to be preserved, it must be true that the materials are subject to the use tax when purchased and fabricated elsewhere even though their form may be altered by the reason of the fabrication." (119 P.2d at 948)

4. As amended in 1966, Regulation No. L5–022 recites: *"Rental of Property by Manufacturer Thereof*
"Where a manufacturer rents or leases to others for use in Alabama equipment manufactured by him, sales or use tax, whichever may apply, shall be due from the manufacturer measured by the purchase price of the materials becoming parts or components of such equipment.
"No tax will be due based upon amounts of rentals received by the manufacturer except on earth moving or construction equipment. (See Rule L5–023) Adopted March 9, 1961, Amended January 20, 1966)"