**In re CULVERHOUSE INC., Debtor.**

**No. 03–12288–WRS.**

United States Bankruptcy Court,
M.D. Alabama.

Oct. 29, 2004.

Collier H. Espy, Jr., Espy, Metcalf & Poston, P.C., Dothan, AL, James M. Sizemore, Jr., Attorney at Law, Alexander City, AL, for Debtor.

## MEMORANDUM DECISION

WILLIAM R. SAWYER, Chief Judge.

This Chapter 11 case came before the Court for hearing on July 15, 2004, upon the Debtor's objection to the claim of the Alabama Department of Revenue. The Debtor was present by counsel James M. Sizemore, Jr., and the State of Alabama was present by counsel Mark Griffin. Evidence was heard and the Court took the matter under submission. For the reasons set forth below, the Debtor's objection to Claim No. 5 filed by the Alabama Department of Revenue is SUSTAINED IN PART AND OVERRULED IN PART. The priority portion of the claim of the Alabama Department of Revenue is ALLOWED as filed, as a priority claim pursuant to 11 U.S.C. § 507(a)(8), seeking taxes in the amount of $45,287.02 and prepetition interest on those taxes in the amount of $12,759.85, for a total priority claim of $58,046.87. The portion of the State's claim in which it asserts an unsecured claim without priority, insofar as the State claims a penalty due in the amount of $10,263.40, is DISALLOWED.

## I. FACTS

On October 1, 2003, Culverhouse, Inc., the Debtor, filed a voluntary petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. (Doc. 1). On November 4, 2003, The Alabama Department of Revenue filed a timely proof of claim for "use taxes" pursuant to Ala.Code § 40–23–60 *et. seq.*, in the amount of $68,310.27. (Claim No. 5). This amount consists of taxes in

the amount of $45,287.02, interest to the date of the petition in the amount of $12,759.85 and a penalty in the amount of $10,263.40. The State claims that the tax and interest amount is entitled to priority pursuant to 11 U.S.C. § 507(a)(8). The State claims that the penalty amount is unsecured without any priority. On April 16, 2004, the Debtor filed an objection to the State's claim. (Doc. 178).[1]

The Debtor is an Alabama corporation with its principal place of business in Ariton, Dale County, Alabama. The Debtor is in the trucking business, specializing in the transportation of household goods. The Alabama Department of Revenue conducted an audit of the Debtor's activities for the period beginning June 1, 1998 and ending September 30, 2002. The audit was conducted by Revenue Examiner Wendy M. Ballard who testified at the July 15, 2004 evidentiary hearing. On January 3, 2003, the State issued an audit report, under Ballard's signature, proposing the tax liability which is the subject of these proceedings. (State's Exhibit 5).

During the audit period, the Debtor purchased 21 Kenworth tractor units from Kenworth of Dothan, Inc. The trucks were driven out of the State within 72 hours of the time of purchase and no sales tax was paid to the State of Alabama, or any other state. In addition, 21 semi-trailers were purchased from vendors in Georgia. No sales tax was paid on the purchase of the trailers either. The tractors and the trailers were registered in the State of Oklahoma. It is undisputed that no sales or use tax was paid to Oklahoma, or any other state.

Robert Culverhouse, the Debtor's president, testified at trial. During the audit period, and for many years before, the Debtor had been under contract with

Burnham Service Company, Inc. (Taxpayer Exhibit 3). Under the agreement, the Debtor provides trucks and drivers for the purpose of hauling household goods. Virtually all of the costs incurred directly as a result of the operation of the Debtor's trucks were born by the Debtor. Burnham paid the Debtor compensation based upon a schedule provided by the contract. The Debtor maintained an office in Ariton, Alabama, which controlled the transportation activities. On some occasions, the Debtor's drivers and trucks may have been dispatched directly by Burnham, but for the most part, it was the Debtor's personnel who controlled the operation of its trucks.

Burnham's principal place of business was in Georgia. The transportation services were performed throughout the United States. Thirty percent of the mileage traveled by the Debtor's vehicles was within the State of Alabama. (State's Exhibit 1). Many of the Debtor's drivers were from the State of Alabama and the State of Alabama was central to the transportation operations of the Debtor. Robert Culverhouse testified that the Debtor's trucks regularly passed to, from and through the State of Alabama. It is also clear from the evidence that the majority of the mileage traveled by the Debtor's trucks (i.e. 70%) took place outside of the State of Alabama. The Debtor does not have any offices other than its Ariton, Alabama office.

The trucks in question were purchased in Alabama and promptly driven out of the State within 72 hours. The trucks were licensed in the State of Oklahoma, which did not, at that time, impose a sales tax upon trucks. The trailers in question were purchased outside of the State of Alabama and likewise licensed in the State of Okla-

---

1. The Alabama Department of Revenue has filed a separate claim for withholding taxes in the amount of $6,576.48. (Claim No. 6). The Debtor does not object to Claim No. 6.

homa. The Debtor admits that no sales tax, to any state, has been paid on the trucks and trailers in question. The question presented here is whether Alabama's use tax may be imposed under these facts.

## II. JURISDICTION

This is an objection to a proof of claim, which is a contested matter. Rule 9014, Fed. R. Bankr.P. The Court may determine the amount of a tax liability. 11 U.S.C. § 505. This Court has jurisdiction to hear this pursuant to 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(B). The State's sovereign immunity is abrogated. 11 U.S.C. § 106.

## III. SUMMARY OF DISCUSSION

The Debtor purchased 21 trucks in Dothan, Alabama, but did not pay sales tax, taking advantage of a provision permitting an exclusion of the tax in those instances where the vehicles are taken out of the State and registered elsewhere, within 72 hours of the time of the sale. In addition, the Debtor purchased 21 trailers outside of the State, registering them in Oklahoma, again paying no sales tax to the State of Alabama, or any other State.[2] The question presented here is whether Alabama's use tax may properly be imposed under these facts. For the reasons set forth below, the Court finds that it may.

■ The determination of whether Alabama use tax applies is a two-step process. The first step is to examine the plain language of the use tax statute, Ala.Code § 40–23–61(c), and determine whether the tax applies. If the answer to this question is no, the inquiry is at an end and the tax may not be imposed. On the other hand, if the answer is yes, the Court must next consider whether any statutory, regulatory or other policy consideration would preclude the imposition of the tax, even if the strictures of § 40–23–61(c) are met. The Court will first analyze the text of pertinent provisions of Alabama statutes governing the imposition of use taxes. Next, the Court will consider five contentions raised by the debtor, which are: (1) whether the trucks must be domiciled in Alabama for use tax to apply; (2) whether use tax may be imposed on property which was exempt from sales tax under the 72 hour drive out exemption; (3) whether the imposition of use tax, under Ala.Code § 40–23–61–(e) violates the commerce clause of the U.S. Constitution; (4) whether the penalty here should be waived pursuant to Ala.Code § 40–2A–11(h); and (5) whether imposition of use tax here is contrary to Ala. Admin. Code § 810–6–5–11.05(7).

The gist of the Debtor's objection is that it does not owe the claimed use taxes, as a matter of Alabama law. The Debtor does not contend that taxes, if found to be owed as claimed, are not entitled to priority pursuant to 11 U.S.C. § 507(a)(8). Therefore, the Court's consideration is limited to the question of whether the use taxes in question were properly imposed as a matter of Alabama law.

## IV. ALABAMA USE TAX UNDER § 40–23–61(c)

■ The State of Alabama imposes a use tax, in the amount of 2%, upon motor vehicles, as follows:

> An excise tax is hereby imposed on the storage, use or other consumption in this state of any automotive vehicle

**2.** Apparently there was a time when certain officials in the State of Oklahoma improperly permitted trucking companies to register their trucks in Oklahoma for the purpose of evading taxes. A brief history of this abuse is contained in a decision of an Administrative Law Judge in proceedings styled *Whatley Contract Carriers, LLC v. State of Alabama Department of Revenue*, Docket No. U 03–372, Order dated March 23, 2004, pp. 3–6.

or truck trailer, semitrailer or house trailer ... purchased at retail on or after October 1, 1965, for storage, use or other consumption in this state at the rate of two percent of the sale price of such automotive vehicle, truck trailer, semitrailer or house trailer.

Ala.Code § 40–23–61(c). The provision should not be considered in isolation, but rather one should also consider several other provisions in Chapter 23 of Title 40.

The State of Alabama also imposes a sales tax upon the retail sale of trucks and trailers. Ala.Code § 40–23–2(4), provides in part, that:

Upon every person ... within this state in the business of selling at retail any automotive vehicle ... an amount equal to two percent of the gross proceeds of sale.

Alabama statute provides an exception for trucks and trailers which are exported or removed from the State within 72 hours from the time they are purchased.

Sales of automobiles, motorcycles, trucks ... that will be registered or titled outside Alabama, that are exported or removed from Alabama within 72 hours by the purchaser or his or her agent for first use outside Alabama are not subject to the Alabama sales tax.

*Id.* The purchase of the trucks in question was made in apparent compliance with the exception provided in § 40–23–2(4), as no sales tax was imposed upon the purchase of the trucks. The trailers were not purchased in the State of Alabama, therefore the 72–hour drive-out exemption is not applicable to the purchase of the semitrailers.

"Property, on which the sales tax imposed by the provisions of Article 1 is paid by the consumer" is exempt from the imposition of use tax. Ala.Code § 40–23–62(1). In other words, if sales tax is imposed on a given transaction, the property is exempt from the imposition of use tax. Moreover, Section 40–23–65 provides that:

If a sales or use tax equal to or greater than the amount of the Alabama tax is paid to another state under a requirement of law, the property which is the subject of such tax when imported for use or consumption in Alabama is not subject to the use tax.

Therefore, Alabama's use tax is not imposed under two circumstances. First, if Alabama sales tax is imposed, the use tax will not also be imposed. Second, if sales or use tax has been imposed by another state, Alabama will not impose its tax.

Two definitional provisions should also be considered. The term "use" is defined broadly as "the exercise of any right or power over tangible personal property incident to the ownership of that property, or by any transaction where possession is given, except that it shall not include the sale of that property in the regular course of business." Ala.Code § 40–23–60(8). The phrase "in this state" means "within the exterior limits of the State of Alabama, and includes all territory within such limits owned by or ceded to the United States of America." Ala.Code § 40–23–60(11).

Considering these statutory provisions together, to properly impose the use tax, under the plain language of the statute, the following must be shown:

1. An automotive vehicle must be purchased at retail.

2. The vehicle must be stored, used or consumed,

3. in the State of Alabama.

In this case, it is not disputed that automotive vehicles (as that term is defined) were purchased at retail. The Debtor contends that the vehicles were not used in the State of Alabama, and in the alterna-

tive, that one or more of the exclusions apply.

The Court will next consider whether the motor vehicles in question were used in the State of Alabama. The State contends that when a corporation which is within the State of Alabama leases equipment, it uses that equipment within the meaning of the statute, even if the trucks never physically enter the State of Alabama. The Debtor has its sole place of business in Alabama and its employees exercised control over the subject trucks and trailers from within the State of Alabama. However, as the trucks in question did enter the State, the Court finds that they were used within the State, both in the sense that they were leased by an Alabama corporation, with its sole place of business in Alabama, and that the motor vehicles were physically used in the State.

■ Trucks and trailers by their nature may be physically "used" in any number of states. This raises a question as to whether motor vehicles are used only when a driver jumps in the cab, puts the truck in gear and drives down the road. The State urges that the Court take a broader reading of the term use to include the act of leasing a truck. The act of leasing a truck is certainly the exercise of a right or power over it.[3] The Court concludes that the act of leasing a truck is a "use" within the definition provided by Alabama law.

Citing the provisions of its contract with Burnham, the Debtor argues that it was Burnham and not the Debtor which in fact "used" the trailers. The contract provides that Burnham had "exclusive possession, control and use of the Contractor Equipment." (Doc. 232, p. 4). The Debtor owned the trucks in question and leased them to Burnham. It was this act of leasing the equipment which was the use which triggered the tax. Indeed, Burnham would not have paid valuable consideration for the use of the trucks unless they were to be used exclusively in furtherance of its business. By leasing these trucks and trailers to Burnham, the Debtor exercised control over them, which subjects that use to Alabama's use tax.

Further support for the proposition that the use tax may be imposed here may be found in an Alabama Supreme Court decision handed down in 1971. *Rabren v. Radio Corporation of America*, 287 Ala. 395, 252 So.2d 55 (1971). In *Rabren*, the Court stated that:

> We concluded that RCA did purchase at retail the materials out of which RCA manufactured the leased machine; that the lease of the materials in the finished form is a use of those materials in Alabama by RCA subject to use tax; and that the basis upon which use tax is to be computed is the cost or sale price to RCA for those materials.

287 Ala. 395, 401, 252 So.2d 55, 60. In *Rabren*, the taxpayer purchased materials and manufactured a data processing machine. The machine was assembled in Florida and then leased to Southern Bell Telephone and Telegraph Company for use in their Birmingham, Alabama office. It would appear that the act of leasing the property is a "use" of the property within the meaning of the use tax statute. The Court concludes that both the trucks and the trailers were used in the State of Alabama, as those terms are defined, and that Alabama use tax was properly im-

---

**3.** The term use is defined as "the exercise of any right or power over tangible personal property incident to the ownership of that property, or by any transaction where possession is given, except that it shall not include the sale of that property in the regular course of business." Ala.Code § 40–23–60(8).

posed. Whether any of the exemptions apply will be discussed in Part V below.

## V. DISCUSSION

In this section, the Court will discuss the contentions raised by the Debtor. These contentions are as follows: (a) whether a motor vehicle must be domiciled in Alabama for use tax to apply; (b) whether use tax may be imposed on property which was exempt from sales tax under the 72–hour drive-out exemption; (c) whether the imposition of use tax, under Ala.Code § 40–23–61–(e) violates the commerce clause of the U.S. Constitution; (d) whether the penalty here should be waived pursuant to Ala.Code § 40–2A–11(h); and (e) whether imposition of use tax here is contrary to Ala. Admin. Code § 810–6–5–.11.05(7). For the reasons set forth in Part V(d) below, the Court finds that the penalty should be waived. The remainder of the Debtor's contentions are rejected.

### A. Whether the trucks must be "domiciled" in Alabama

■ The Debtor contends that "the consumers' use tax of Ala.Code § 40–23–61(c) does not attach unless the property is domiciled in Alabama." (Doc. 232, p. 5). The Debtor cites the case of Ex parte Fleming Foods, Inc., 648 So.2d 577 (Ala. 1994), for this proposition. Reference to the entire passage will provide context.

> When the Complete Auto Transit test is applied to a state's use tax assessment, it must be understood that a use tax is not a tax on revenues generated from carrying on interstate business, like the taxes in Goldberg v. Sweet, 488 U.S. 252, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989), but is an excise tax imposed upon the privilege of storing, using, or otherwise consuming tangible personal property purchased at retail outside the state and domiciled in the state. The use tax is not a recurring annual tax, but is a one-time tax levied at the same rate as the sale tax and is complementary to the sale tax.

The Debtor argues that the Alabama Supreme Court's use of the phrase "domiciled in the state" constitutes a narrowing of the statute. It should be noted that the word "domicile" does not appear anywhere in the text of § 40–23–61(c). Nothing in the text of the decision in Fleming Foods would suggest that the Alabama Supreme Court intended such a limitation on the plain language of the statute. The more reasonable reading of this passage would indicate that the reference to domicile was descriptive rather than limiting. That is, the Court in Fleming Foods found that the subject property, in that case, was domiciled in the State and that this finding supported its conclusion that the property had been used in the State of Alabama. That the property in Fleming Foods was domiciled in that case does not support the Debtor's claim that use tax must be found in every case for the use tax to be lawfully imposed.

Further support for the proposition that the Alabama Supreme Court did not intend to engraft an additional condition upon the statute may be found in the decision. "The use tax imposed in the present case is not imposed upon revenue derived from carrying on an interstate business or interstate commerce, but is intended to prevent one from avoiding the sales tax law." Fleming Foods at 579. "We also acknowledge that the Use Tax Act and the Sales Tax Act are complementary. The use tax serves to equalize the burden of the sales tax and to prevent a person from avoiding the sales tax by purchasing goods outside the state." Id. The Court's focus in Fleming Foods was to prevent the avoidance of taxes.

■ To Debtor's contention, that use tax may not be imposed unless the property is domiciled within the State is incorrect for two reasons. First, it would add an additional condition not contained in the plain language of the statute. Second, it would impose a condition which the Alabama Supreme Court did not define and did not intend to engraft upon the existing statute. Had the Alabama Supreme Court intended to impose such a limitation, one would have presumed that it would have described what it meant to domicile personal property in the State. In general usage, the term domicile is usually used in reference to individuals.[4] As the Court in *Fleming Foods* stated, the purpose of the use tax is to prevent evasion of sales tax. It would be illogical to engraft a condition which would make the use tax easily avoided. If the Debtor's reading of *Fleming Foods* is correct, rather than prevent avoidance of a tax, it would make tax avoidance much easier to achieve. The more logical reading of this passage is that the Alabama Supreme Court determined that, in the *Fleming Foods* case, the property was domiciled in the State of Alabama, thereby satisfying the statutory requirement that property be used within the State. This finding is not a valid basis upon which one would then impose the requirement that for every future case, the tax may not be imposed unless the property is "domiciled" within the State. For this reason, the Debtor's reading of *Fleming Foods* is rejected.

**B.  Whether the purchase of the tractors should be exempt from use tax as the purchase of the vehicles was exempt from sales tax**

■ The Debtor argues, at pages 7–9 of its brief, that use tax should not be imposed as the transaction was not subject to sales tax, citing the case of *State v. Bay Towing & Dredging Co.*, 265 Ala. 282, 90 So.2d 743 (1956). (Doc. 232). In *Bay Towing*, an Alabama dredging company purchased 10 used barges from a Louisiana corporation and five from two Texas corporations. In addition, it purchased two tugs from a Louisiana shipyard. As the State of Alabama did not, at that time, impose tax upon the purchase in "casual" or "isolated" sales within the State, it would be unlawful discrimination to impose a use tax on such transactions taking place outside the State but used within the State. *Id.* at 286–87, 90 So.2d 743.

■ Even if one assumes for the sake of argument that *Bay Towing* is still good law, in that the pertinent statutes have been amended substantially since the case was decided in 1956, the Debtor's argument is nevertheless without merit.[5] The 72–hour drive-out exemption, which is in issue here, appears to be designed to prevent double taxation. By promptly driving a vehicle out of the State, and registering

---

4.  *See, Blacks Law Dictionary*, Seventh Edition, which defines domicile as "the place at which a person is physically present and that the person regards as home." Applying this definition to motor vehicles is difficult in that the motor vehicle itself does not "regard" anyplace as home. One might next look to the intention of either the owner or the lessee. How that person's intent might be determined is yet another problem which was not addressed by the Alabama Supreme Court in *Fleming Foods*.

5.  The current version of the statute imposes a use tax on property "purchased at retail on or after October 1, 1965." Ala.Code § 40–23–61(c). Therefore, the applicability of this 1956 case is immediately suspect. To be sure, an earlier version of the use tax statute was enacted in 1939. The Debtor has not attempted to show how the decision of the Supreme Court in *Bay Towing* may be applicable to the current version of the use tax statute.

it elsewhere, the purchaser presumably pays tax in the state where the vehicle is registered. This would permit Alabama automobile dealers to compete with out of state dealers on an even playing field. Where, as here, an Alabama corporation purchases trucks in Alabama, drives them out of the state and registers them in another state, without paying taxes, it properly incurs a use tax when the untaxed property is subsequently used within the State. If no out of state tax is imposed and the vehicles are subsequently used in the State of Alabama, the use tax would properly apply. Indeed, the use tax statute is intended to be read together with the sales tax provisions. *State v. Marmon Industries, Inc.,* 456 So.2d 798, 801 (Ala.Civ.App.1984). Imposition of the tax here is consistent with the State's purpose of imposing a tax on either the purchase or use of a motor vehicle in the State.

The Debtor's argument here is circular. By its very nature, a use tax is imposed only where a sales tax has not been paid. The pertinent sales and use tax provisions express a clear policy—that the purchase or use of motor vehicles within the State of Alabama should incur a tax. Unlike the situation in *Bay Towing* where a class of transactions was excluded from the imposition of sales tax, the purchase of motor vehicles is intended to incur a tax. The Debtor is attempting to avoid taxation by using a provision designed to prevent double taxation to create a situation where no tax is imposed.

One may distinguish the facts in *Bay Towing* from this case by examining the underlying policy considerations. As a general rule, the State of Alabama imposes sales tax on the retail sale of tangible personal property. Ala.Code § 40–23–2. However, 46 kinds of tangible personal property have been exempted from the imposition of sales tax. Ala.Code § 40–23–4 (for example, fertilizer when used for agricultural purposes, is exempt from the imposition of sales tax under the current version of the statute). As the State has exempted fertilizer when used for agricultural purposes from the imposition of sales tax, it would be contrary to the intent of the Legislature to impose a use tax.

On the other hand, the 72–hour drive-out provision of Alabama Code § 40–23–2(4), exempts only sales where the "first use" is outside of the State.[6] This contemplates that the vehicles would be registered in another State, where sales taxes will be paid. This provision appears to be intended to permit Alabama automobile dealers to compete on an even playing field with dealers from other States, with respect to vehicle purchasers who are not Alabama residents. Absent this 72–hour drive-out provision, an out-of-state purchaser may, depending upon the structure of his state's taxing scheme, incur a double tax, thereby preventing Alabama automobile dealers from competing with out-of-state dealers for out of state purchasers, unless the dealer was willing to absorb the double tax in the sales price of the motor vehicle. The 72–hour drive-out provision exempts the purchaser from imposition of the sales tax where the "first use" of the motor vehicle is outside the State of Alabama. On the other hand, the use tax under § 40–23–61(c), does not limit its application to a "first use" in the State of Alabama. Therefore, as here, where the

---

**6.** Under the facts of this case, one might reasonably question whether the "first use" of the trucks in question was outside of the State as it would appear that they were immediately leased to Burnham. As that question is not raised here, the Court will not consider the question of whether the trucks in question were properly exempt under the provisions of Ala.Code § 40–23–2(4).

72–hour drive-out provision is invoked to avoid the payment of sales tax at the time of purchase, and where, as here no out-of-state sales tax is paid, the subsequent use of the motor vehicles in the State of Alabama properly triggers the imposition of the Alabama use tax.

### C. The provisions of Ala.Code § 40–23–61(e) do not apply

The Debtor argues, at pages 9–13 of its brief that the imposition of use tax under § 40–23–61(e) is not appropriate as it would discriminate against interstate commerce. (Doc. 232). The Court need not consider this argument in detail as the State has imposed its use tax under § 40–23–61(c) and not (e). By not advancing the argument that the imposition of the tax under subsection (c), as was done here by the State, discriminates against interstate commerce, the Court infers that the Debtor makes no claim of discrimination in this case insofar as the State has imposed its tax under § 40–23–61(c) and not subsection (e).[7]

### D. The penalty under § 40–2A–11(h) should be waived

■ The Debtor contends, in the alternative, that even if the State's position is sustained with respect to the imposition of the use tax liability, the penalty should nevertheless be excused, citing *Whatley Contract Carriers*.[8] In that case, under nearly identical facts, an Administrative Law Judge waived the penalty, finding that:

> ... reasonable cause clearly exists to waive those penalties given that until recently, the Department had never before assessed use tax on property purchased at retail in Alabama, and also considering the misleading Department regulation and web site comments discussed above. Waiver of the penalties should not, however, be viewed as approval of the Taxpayer's initial registration of the trucks in Oklahoma.

*Whatley Contract Carriers*, at 23, n. 22. As the Debtor in this case is in the same situation as the taxpayer in *Whatley* and as the decision of the Administrative Law Judge appears to be well reasoned, it seems appropriate to waive the penalty here. The Court heard the testimony of the Debtor's president Robert Culverhouse at the July 15 evidentiary hearing. Culverhouse was forthright and credible and believed, in at least subjective good faith, that he had properly and lawfully ordered his business affairs so as to legally avoid the tax. While this Court has rejected the legal arguments advanced by the Debtor here, it does not appear that there is any published authority for the proposition that a use tax would be imposed under these facts. To be sure, the act of driving motor vehicles out of the State for the sole purpose of registering them in a State which does not impose a sales tax, is suspect. Given the unsettled state of Alabama law on this question, the Debtor's subjective good faith and the authority of the unpublished decision in *Whatley Contract Carriers*, which the undersigned finds persuasive, the Court finds that the penalty in this instance should be waived.

---

7. This should not be read as an indication that had the State imposed its tax under subsection (e), that this Court would have determined that it did in fact discriminate against interstate commerce. Rather, this argument is disposed of on the principal that it is a dog that did not bark.

8. The Court discussed the Whatley Contract Carriers case in some detail in Footnote 2 *supra.*

### E. Regulation § 810–6–5–.11.05(7) does not apply

On September 4, 2004, the Debtor filed an "Addendum" to its brief which advances an argument which had not previously been briefed. (Doc. 282). The Debtor argues that a regulation codified at Ala. Admin. Code § 810–6–5–.11.05(7), is inconsistent with the State's proposed imposition of its use tax here. While this regulation did not become effective until July 9, 2004, the Debtor argues that it is a codification of the State's policy and should be given effect here. The Debtor does not cite any authority for the proposition that it may take advantage of a regulation which was not effective at the time the transaction in question took place and the Court rejects the Debtor's contention here. Indeed, were the State to attempt to impose an *ex post facto* tax the Debtor would quite properly object.

Even if the Court were to consider the Debtor's argument on its merits, the argument nevertheless fails. The regulation in question applies to "persons firms, or corporations that purchase automotive vehicles which are taxable pursuant to *Code of Ala.1975*, Section 40–23–102." Ala. Admin. Code § 810–6–5–.00.05(7). As the tax in issue here is a use tax, imposed pursuant to Ala.Code § 40–23–61(c) and not pursuant to § 40–23–102, the regulation quite simply does not apply here. The Debtor is attempting to take advantage to an exemption which, (1) was not in effect at the time of the transactions in question, and (2) which applies to a tax other than the tax in question.

The Debtor's argument ignores an additional requirement imposed by the regulation. "If the vehicle was used in another state and proper sales or use tax was paid to the other state, no additional tax is due." Ala. Admin. Code § 81–6–5.11.05(7). As no sales or use tax was paid to any other state, this regulation would provide the Debtor no relief even if it did apply. The additional argument advanced in the Debtor's Addendum to its brief is rejected.

## VI. CONCLUSION

The State of Alabama imposes a use tax on motor vehicles purchased at retail and used within the State. Under the facts of this case, the use tax was properly imposed. In addition, the Debtor has made several arguments that the use in question is exempt from tax. As those arguments are rejected, the Debtor's objection is SUSTAINED IN PART AND OVERRULED IN PART. The priority portion of the claim of the Alabama Department of Revenue is ALLOWED as filed, as a priority claim pursuant to 11 U.S.C. § 507(a)(8), seeking taxes in the amount of $45,287.02 and prepetition interest on those taxes in the amount of $12,759.85, for a total priority claim of $58,046.87. The portion of the State's claim in which it asserts an unsecured claim without priority, insofar as the State claims a penalty due in the amount of $10,263.40, is DISALLOWED.

### ORDER REGARDING DEBTOR'S OBJECTION TO CLAIM

This Chapter 11 case came before the Court for hearing on July 15, 2004, upon the Debtor's objection to the claim of the Alabama Department of Revenue. Upon review of the record and for the reasons set forth in a memorandum decision, the Debtor's objection to Claim No. 5 filed by the Alabama Department of Revenue is SUSTAINED IN PART AND OVERRULED IN PART. The priority of the claim of the Alabama Department of Revenue is ALLOWED as filed, as a priority claim pursuant to 11 U.S.C. § 507(a)(8), seeking taxes in the amount of $45, 287.02 and prepetition interest on those taxes in

the amount of $12,759.85, for a total priority claim of $58,046.87. The portion of the State's claim in which it asserts an unsecured claim without priority, insofar as the State claims a penalty due in the amount of $10,263.40, is DISALLOWED.